BAILEY DEVELOPMENT CORPORATION, APPELLANT, *v.*
MACKINNON-PARKER, INC., APPELLEE.

[Cite as Bailey Development Corp. v. MacKinnon-Parker,
Inc. (1977), 60 Ohio App. 2d 307.]

(No. L-77-051—Decided May 20, 1977.)

*Mr. Robert W. Browning, Jr.,* for appellant.
*Messrs. Shumaker, Loop & Kendrick, Mr. Robert B.
Gosline* and *Mr. H. Frank McDaniel,* for appellee.

WILEY, J. This is an appeal by plaintiff, Bailey Development Corporation, from an order denying plaintiff's Motion for Permanent Injunctive Relief, enterec in the Common Pleas Court of Lucas County, on March 4, 1977.

Plaintiff is an Ohio corporation involved in residential and commercial development and construction in the Toledo, area. One of plaintiff's most recent projects, and the subdivision at issue herein, is Hawthorne Hills, a development of approximately 300 acres, consisting of commercial, multi-family and single family structures, including Toledo's Southwyck Shopping Mall. This mall is a group of contiguous buildings and parking lots occupying 70 acres in the center of the development.

In June 1970, a set of restrictions titled "Adoption of Hawthorne Hills and Declaration of Restrictions Therefor" was filed in the office of the Lucas County Recorder. These restrictions state, in pertinent part:

**"Article One**

*"Section 1.* No building, fence, wall, sign or other structure shall be erected or maintained on said lots unless erected or maintained in accordance with plans and specifications showing the nature, kind, shape, type, material, color scheme and location of such structure, which shall be submitted to Bailey Development Corporation, its successors or assigns, and approval thereof endorsed thereon in writing.\* \* \*

*"Section 4.* A landscaping plan shall be submitted for approval, in writing, prior to start of construction. Said landscaping shall have been installed and completed within six months from date of occupancy of the building built thereon.\* \* \*

*"Section 8.* Bailey Development Corporation reserves the sole and exclusive right to establish grades and slopes on the premises herein described, and to fix the grade at which any structure shall here after be erected or place thereon, so that the same may conform to a general plan.\* \* \*

*"Section 9.* All rubbish and debris, combustible and noncombustible, and all garbage shall be stored in under-ground containers or stored and maintained in containers, entirely within small structures as approved by Bailey Development Corporation. Additional regulations for the storage, maintenance and disposal of rubbish, debris, leaves and garbage may, from time to time, be established by Bailey Development Corporation.\* \* \*

**"Article Two**

*"Section 1.* Each Grantee of Bailey Development Corporation by the acceptance of a deed of conveyance, accepts the same subject to all restrictions, conditions, covenants, reservations, easements, and the jurisdiction, rights, and powers of Bailey Development Corporation, created or reserved by this Declaration or by plat or deed restrictions heretofore recorded, and all easements, rights, benefits, and privileges of every character hereby granted, created, reserved or declared, and all impositions and obligations hereby imposed shall run with the land and bind every owner

as though the provisions of this Declaration were recited and stipulated at length in each and every deed of conveyance. The violation of any restriction or condition, or the breach of any covenant or provision herein contained shall give Bailey Development Corporation or their successors or assigns, the right: (a) to enter upon the land upon which, or as to which, such violation or breach exists, and to summarily abate and remove, at the expense of the owner of said lot or lots, any structure, thing, or condition that may exist thereon contrary to the intent and meaning of the provisions hereof and Bailey Development Corporation shall not thereby be deemed guilty of any manner of traspass; [sic] or (b) the continuance of any breach may be enjoined, abated, or remedied by appropriate legal proceedings, either at law or in equity, by Bailey Development Corporation, its successors of [sic] assigns."

Southwyck Boulevard is a horseshoe-shaped street surrounding the Southwyck Shopping Mall. Since 1970, approximately 21 buildings have been constructed along the outer rim of Southwyck Boulevard. In each instance, plans were submitted to and approved by plaintiff prior to the commencement of construction.

Lot No. 4, located on the outer rim of Southwyck Boulevard, is owned by defendant MacKinnon-Parker, Inc., a Toledo based construction company. Defendant proposed construction of a six-story apartment for the elderly on that lot and, after negotiations with the Lucas Metropolitan Housing Authority, commenced construction on January 3, 1977. Though cognizant of the "Hawthorne Hills Declaration of Restrictions," defendant failed to present its plans for plaintiff's approval until January 3, 1977, the same day that construction began.

Plaintiff reviewed the plans and, in a letter dated January 10, 1977, rejected them. When construction continued, plaintiff filed a complaint seeking a temporary restraining order, a preliminary injunction and a permanent injunction.

Plaintiff's request for a preliminary injunction was heard on January 24, 1977, during which extensive examination and cross-examination was had and numerous exhibits admitted. Upon completion of the hearing, the parties agreed to submit the matter to the lower court on the prayer for perma-

nent injunctive relief. The Court of Common Pleas decided in favor of defendant.

Plaintiff presents two assignments of error. The first assignment of error is presented as follows:

"The trial court erred, as a matter of law, in its determination that a sufficient general scheme, with respect to the aesthetics of design and construction, is absent in Hawthorne Hills."

This court is cognizant of the law's general aversion toward efforts to restrict land use. Our own Supreme Court, in *Loblaw* v. *Warren Plaza, Inc.* (1955), 163 Ohio St. 581, said at 591-92:

"The general rule, with respect to construing agreements restricting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate. 14 American Jurisprudence, 621, Section 212.***

" 'Where the right to enforce a restriction contained in the conveyance as to the use of the property conveyed is doubtful all doubt should be resolved in favor of the free use thereof for lawful purposes by the owner of the fee.' "

See *Hunt* v. *Held* (1914), 90 Ohio St. 280; *Arnoff* v. *Williams* (1916), 94 Ohio St. 145; *University Hills, Inc.,* v. *Patton* (C.A. 6, 1970), 427 F. 2d 1094.

However, that disfavor is overcome if the evidence establishes the existence of a general plan or scheme, as well as notice to the purchaser of that plan or scheme.

Notice to the purchaser herein has been established without question. We find that the evidence establishes the existence of a general plan or scheme.

In *Carranor Woods Property Owners' Assn.* v. *Driscoll* (1957), 106 Ohio App. 95, the Court of Appeals of Lucas County stated:

"***[I]n order that a restrictive covenant requiring submission to and approval by the grantor of plans for the erection of a dwelling may be valid and enforceable, such covenant must be used (1) in connection with some general plan or scheme,***." (Page 101.)

The syllabus states:

"1. A court of equity will enforce the observance of valid restrictive covenants as to the use of property against a grantee who has notice of such covenants.

"2. A grantee in a conveyance of land subject to restrictions of record is deemed to have notice thereof from the recording of a declaration of reservations and restrictions incident to the platting of an allotment, accompanied by substantially uniform compliance with such restrictions.

"3. In order that a restrictive covenant requiring the submission to and approval of the grantor of plans for the erection of a dwelling may be valid and enforcible, such covenant must be used (1) in connection with some general plan or scheme of which the grantee has notice, or (2) some other designated or stated restriction within which such approval may operate, or (3) the covenant must contain some criterion or limitation regulating the scope of such approval.

"4. A restriction of record providing that no building, etc., shall be erected upon a lot unless erected in accordance with plans which shall be submitted to the grantor and approval thereof endorsed thereon in writing is valid but does not of itself add any new or different restrictions than those set forth in the recorded declaration of restrictions and only requires plans to be submitted for approval to assure that such plans conform to the restrictions of record.

"5. Where the evidence discloses a failure to adopt a uniform plan with respect to the location of garages in an allotment and the grantor's successor has refused to approve the plans and specifications submitted by a lot owner on the sole ground that entrance to the garage must be at the side or to the rear of the dwelling, such successor is not entitled to an injunction restraining such lot owner from erecting his dwelling in accordance with the plans and specifications submitted."

The written restrictions in *Carranor* were similar to those in the case *sub judice*.† They contained no specific restriction as to the positioning of garage entrances.

---

† In oral argument, defendant disclosed that the Bailey referred to in *Carranor, supra,* was essentially the same entity as in the case *sub judice,* and therefore had knowledge of the unenforceability of the restrictions.

However, Bailey attempted to enforce a restriction in regard thereto, claiming that no such entrances should face the street. The court, in *Carranor,* did not limit itself to the written restrictions, but considered evidence of the construction in existence. In *Carranor,* as in the case herein, construction of the development was substantially completed. The court, therein, finding that eleven of the thirty-six entrances constructed in the tract did not conform to the standard sought to be enforced, found that a general plan was not present.

Since a general plan was not evidenced by specific restrictions, nor by the completed construction, the court found that:

"***for aught the evidence discloses, such plan was merely in the mind of the developer, and the defendants had no knowledge or notice of such requirement until after they had purchased their lot." (Page 102.)

Had the evidence in *Carranor* indicated compliance with the restrictions as to all the garages, we conclude that the court would have enforced the unspecified restrictions.

In *Kline* v. *Colbert* (1949), 91 N.E. 2d 299, the Common Pleas Court of Montgomery County found that, since only 141 of the 635 lots in question were burdened with restrictions, there existed no discernible general scheme or "practice in the plat" which could have provided notice.

Two other cases are instructive. In *Thodos* v. *Shirk* (1956), 248 Iowa 172, 79 N.W. 2d 733, the Supreme Court of Iowa stated, at 181, 79 N.W. 2d 738,739:

"In order to prove the existence of a general plan by evidence of similar restrictions imposed in the sale of other lots in the subdivision, it is not necessary that the identical restrictions be found in every deed, so long as the scheme of creating a uniform subdivision is still apparent.***

"***[H]e who takes land with notice, actual or constructive, of a restriction upon it will not in equity and good conscience be permitted to act in violation of the terms of the restriction.***"

And, in a companion case, *Grange* v. *Korff* (1956), 248 Iowa 118, 79 N.W. 2d 743, that court said, at 127, 128, 79 N.W. 2d 748, 749:

"In order to prove the existence of a general plan it is not necessary that the restrictions be exactly the same in all the

deeds so long as the scheme of creating a uniform subdivision is apparent. * * *

"*The general appearance and character of the tract and the nature of the improvements thereon* should have indicated to them the presence of some character of building restrictions." (Emphasis ours.)

In the case *sub judice,* it is undisputed that defendant had notice of the restrictions set forth in plaintiff's "Declaration of Restrictions." Despite this notice, defendant chose to begin construction of the building in question without giving plaintiff an adequate opportunity to consider the merits of its architectural design.

Twenty-one buildings have already been constructed along the outer rim of Southwyck Boulevard. Only the lot in question remains vacant. All of these structures front on the Boulevard. As to these structures, all parking lots are located to the side and, or, rear. In each case, plan approval was sought and obtained from plaintiff. Not one of the existing buildings can be described as "spartan," a word used by defendant's expert witness to characterize the outward appearance of the proposed structure. Excepting the situation before us, plaintiff's restrictions have been complied with.

Defendant was not constrained to purchase lot No. 4. Having purchased this tract from a secure bargaining position, and with full notice of the existence of restrictions, defendant should not now be heard to complain of the invalidity of those restrictions. *Tulk* v. *Moxhay* (1848), 22 Eng. Ch. Rpts. 774, 41 Eng. Rpts. (Full Rep.) 1143.

Defendant contends that there was no recognizable scheme or plan. This contention would have been far more convincing had defendant's proposed building been one of the first constructed in the tract. In such event, the absence of specific written restrictions might have proven fatal to plaintiff's plan. However, the outer rim of Southwyck Boulevard stands complete, with the exception of defendant's proposed structure. Given the size of defendant's proposed structure in proportion to the other buildings in the tract, and its potential total impact on the area (including aesthetic), defendant should have been doubly sensitive to the existence of this general scheme.

In *Fairfax Community Assn.* v. *Boughton* (1955), 70 Ohio Law Abs. 178, headnotes 1 and 5 state:

"1. A restrictive covenant in defendants' chain of title and in the chain of title of all property owners of a subdivision which provides that plans for houses to be built and maintained in such subdivision must be submitted to a building committee and which grants to such committee broad discretionary authority to approve or disapprove such construction and maintenance for the protection of all the property therein, in furtherance of a general plan for the development of the subdivision, is not void as against public policy."

"5. Where a restrictive covenant in a deed, part of a 'general plan' for the subdivision in question, provides for the submission of building plans to a committee, forbids any building, fence, wall or other structure from being commenced or erected, etc., without the written consent of the corporation, and provides a minimum cost for such houses, such covenant grants broad discretionary power in the corporation and does not limit its approval only to the minimum cost provision in such covenant."

In the opinion of the court, Judge Leach states, at 182:

"In support of their contention, defendants cite and rely upon a decision of the Court of Appeals of Summit County, a decision of the Hamilton County Common Pleas Court and a decision of the Montgomery County Common Pleas Court; *Exchange Realty Company* v. *Bird,* 16 Abs. 391; *Finlaw* v. *Jacobs,* 30, O.O. 7 and *Kline* v. *Colbert,* 56 Abs. 295. Plaintiff contends that such cases are distinguishable and that in any event, this Court is bound by the decision of the Supreme Court of Ohio in *Dixon* v. *The Van Sweringen Company,* 121 Oh St. 56, and by the decision of the Court of Appeals of this district in *Smith* v. *Volk,* 85 Oh Ap 327.

"While certain language standing alone in the cases relied on by defendants would indicate a contrary conclusion, we are in agreement with plaintiff that such cases are distinguishable. In any event, we believe we are bound by the holding of the Supreme Court of Ohio in *Dixon* v. *The Van Sweringen Company* and believe that this view followed by the decisions of the highest appellate courts in other states is the sounder view of the problem presented."

In *Rhue* v. *Cheyenne Homes, Inc.,* (1969), 449 P. 2d. 361, the first headnote states:

"1. Purpose of provision in declaration of protective covenants that no building shall be erected, placed or altered on any subdivision lot until the construction plans and specifications on the plan showing the location of the structure shall have been approved by the architectural control committee was to protect present and future property values in the subdivision and it would not be held unenforceable on ground that no specific standards had been established to guide the committee in determining approval or disapproval of such plans."

A restrictive covenant can be created by the "grantor's pursuing a course of conduct indicating a neighborhood scheme, leading the purchasers to assume its adoption and the adherence to it by such conduct." 20 American Jurisprudence 2d 736, 737, Covenants, Conditions and Restrictions, Section 175.

We find that a general scheme was present in Hawthorne Hills and that defendant had notice of that scheme and of the use restrictions pertaining to lot No. 4.

Plaintiff's first assignment of error is well taken.

Assignment of error No. 2 is presented as follows:

"II. The lower court erred in its conclusion that the general scheme of Hawthorne Hills requires that the proposed building be located as far away from residential housing as permitted by zoning ordinances."

The Toledo Municipal Code, Section 9-16-1 (3) provides:

"In a C-2 Restricted Office District, a structure may be erected to the maximum height without limitation on stories if it is located 200 feet or more from an R-A, R-B, R-1, R-2, R-3 or R-4 District."

Although a 200-foot limit is required by the code, there is nothing to indicate that defendant could not seek a waiver of that limitation.

Further, the proposed apartment building is, in essence, a large multi-family unit. It is the only such building in Hawthorne Hills. We see, in the general scheme of this subdivision, no indication that a large multi-family unit must be at least 200 feet from smaller multi-family units.

We conclude that the trial court erred in finding that the

general scheme of Hawthorne Hills requires that the proposed building be located as far from residential housing as permitted by zoning ordinances. Assignment of error No. 2 is well taken.

Defendant contends that:

"d. Bailey's Cancellation, Abandonment And Release Of All Restrictions On Lot A Terminated The Restrictions On All Commercially Zoned Lots In Hawthorne Hills."

We disagree. We find from the record that the Lion Dry Goods Co. purchased a section of lot A *before* plaintiff's "Declaration of Restrictions" was filed.

Bailey attempted to enforce the restrictions as to the Lion Dry Goods Company and litigation resulted. In the settlement of the litigation, a release of the restrictions on lot A was effected. This release was necessary to assure the development of the core shopping center. All the owners of Hawthorne Hills subdivision signed the release of restrictions as to lot A only. It was thereafter that the restrictions were enforced as to all other commercial development. The actual construction on lot A, though not controlled by the restrictions, did not materially adversely affect the general plan of the remaining commercial development.

In abstract terms, Hawthorne Hills can be likened to a mosaic: individual, dissitilar pieces, arranged in a preconceived pattern to form a unified, recognizable design. One prominent piece, defendant's proposed structure, is yet to be fitted into place. Within reasonable bounds, the creator of that mosaic must have the privilege of choosing that piece. While his "whim" need not be accepted, his experienced judgment must be considered.

Parties in the position of MacKinnon-Parker must be protected against the imposition of arbitrary or capricious building restrictions. Thus, a pivotal consideration in any future negotiations between plaintiff and defendant must be the judgment exercised by plaintiff in determining the acceptability of defendant's plans. Absent specific written restrictions, plaintiff's judgment must be measured against the standards of good faith and reasonableness. See *Rhue* v. *Cheyenne Homes, Inc., supra; Fairfax Community Assn.* v. *Boughton, supra; La Vielle* v. *Seay* (Ky. 1966), 412 S.W. 2d 587; *Kirkley* v. *Seipelt* (1957), 212 Md. 127, 128 A. 2d 430;

*Parsons* v. *Duryea* (1927), 261 Mass. 314, 158 N.E. 761; *Syrian Antiochian Orthodox Archdiocese* v. *Palisades Associates* (1970), 110 N.J. Super. 34, 264 A. 2d 257.

At this stage of the proceedings, there is insufficient evidence as to plaintiff's recommendations for this court to make a final determination as to their reasonableness. Upon remand, both parties will have the opportunity to rise to admirable heights of consideration for each others' views, the housing needs of the elderly, the limited amount of available LMHA funds, and the long-range improvement of the quality of life in this community. If both parties in good faith strive to reach an accommodation at this summit, a rare opportunity will not be lost, and all involved will be enriched by the warm glow of accomplishment. If this opportunity is lost, all will suffer the inevitable devastating pain of failure.

On consideration whereof, this court finds that substantial justice has not been done the party complaining. It is therefore ordered, adjudged and decreed that defendant MacKinnon-Parker, Inc., be enjoined from continuing construction of a building on lot No. 4 in Hawthorne Hills Subdivision, Southwyck Boulevard, Toledo, Ohio, until such time as approval of its building plans and specifications is obtained from plaintiff Bailey Development Corp.

This cause is remanded to the Court of Common Pleas of Lucas County for enforcement of the injunction entered herein and for further proceedings not inconsistent with the judgment herein, including proceedings necessary to determine questions of reasonableness, good faith, and capriciousness.

*Judgment reversed.*

POTTER, P. J., and BROWN, J., concur.

WILEY, J., retired, was assigned to active duty under authority of Section 6 (C), Article IV, Constitution.