DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment entered by the Ottawa County Court of Common Pleas which granted the summary judgment motion of defendants-appellees, Sigmund W. Nachman, et al., denied the summary judgment motion of plaintiff-appellant, Johnson's Island Property Owners' Association ("JIPOA"), and thereby dismissed the action.
The undisputed facts of this case are as follows. In 1956, Johnson's Island, Inc. purchased Johnson's Island in Sandusky Bay, Ottawa County, Ohio. Subsequently, Johnson's Island, Inc. subdivided the island, creating the Bay Haven Estates subdivision. That subdivision included approximately three hundred building lots located on either side of a road which circles the outside perimeter of the island. In creating that subdivision, however, Johnson's Island, Inc. reserved to itself, its successors and assigns the interior portion of the island and two other coastal properties.
Appellees Sigmund W. and Janet M. Nachman are the record owners of five lots in Bay Haven Estates. The Nachmans purchased one lot in 1980 from an individual and four lots in 1981 from the original developer, Johnson's Island, Inc. The conveying instruments all stated that the properties were free and clear of all encumbrances except the Declaration of Deed Restrictions recorded in Volume 8 Misc., Page 518 of the Records of Ottawa County and other "conditions and restrictions of record." The deed restrictions referred to in the conveying instruments were created by Johnson's Island, Inc. and set forth covenants and conditions applicable to the improvement and use of all lots in the Bay Haven Estates subdivision. The restrictions further refer to an organization known as Johnson's Island Club, Inc. The restrictions then confer upon Johnson's Island Club, Inc. certain rights and responsibilities: (1) approving or denying septic tanks and filtration beds; (2) approving or denying fencing; (3) determining whether an animal is a nuisance; (4) approving or denying the sale and transfer of subdivision lots; and (5) enforcing violations or breaches of the deed restrictions "by appropriate legal action."
Johnson's Island Club, Inc. was incorporated as a non-profit corporation in August 1956, by officers of Johnson's Island, Inc. The Articles of Incorporation of Johnson's Island Club, Inc. set forth the corporation's purposes as follows:
 "To promote the development of the common facilities on Johnson's Island, Sandusky Bay, Ottawa County, Ohio for the use and benefit of all lot owners thereof; to operate and maintain said facilities and to adopt and enforce regulations governing the conditions of use thereof; to provide service on or to the Island for the members as required or desired; to provide a means of cooperation among the members hereof in meeting the problems incident to island living; to maintain standards for the admission of members thereto and to give consent to the sale or transfer of realty on said Island; all of the foregoing being for the purpose of fostering the maximum use and high standards of maintenance of the common facilities of Johnson's Island; to permit the full enjoyment thereof as an island summer community for the members, their families and guests."
In addition, the Johnson's Island Club, Inc.'s Articles of Incorporation provide that: "Membership in this corporation shall be open only to the trustees named herein and to bona fide owners or contract purchasers of parcels of realty on Johnson's Island, Inc., Sandusky Bay, Ottawa County, Ohio." Accordingly, the club became an association of individuals who own property on Johnson's Island.
The Articles of Incorporation further provide for the adoption of regulations. The Johnson's Island Club, Inc.'s original regulations were not made a part of the record below and nothing in the record indicates when regulations were originally adopted. Nevertheless, the record does contain amendments to Johnson's Island Club, Inc.'s Code of Regulations which were adopted at the September 18, 1983 annual meeting of the members of the corporation. Pursuant to those amendments, the name of the corporation was changed to Johnson's Island Property Owners' Association, JIPOA, the appellant herein. In addition, the parties agree that a document entitled "Articles of Incorporation of Johnson's Island Property Owners' Association" is, despite its title, the organization's code of regulations. Those regulations repeat the purpose of the corporation set forth in Johnson's Island Club, Inc.'s Articles of Incorporation and provide in pertinent part as follows:
"ARTICLE I
"Members
 "Section 1. Membership. The members of the association shall be comprised of individuals who own property on Johnson's Island, Ottawa County, Danbury Township, Ohio. A membership is described as an individual or individuals who own a lot or lots and pay yearly membership dues and assessments. (For explanation of dues and assessments see Article IV.)
 "New members will be approved for membership by the majority of the Trustees voting at an official meeting of the Trustees.
"* * *
"ARTICLE III
"BOARD OF TRUSTEES
"* * *
 "Section 5. Duties. The Board of Trustees shall have general supervision of the affairs of the corporation and may make general rules and regulations for the government of the corporation and members thereof. In addition to those enumerated heretofore given to the Board of Trustees, they shall have the power to make assessments for expenses incurred in promoting the common benefit of the association.
"* * *
"ARTICLE IV
"DUES AND ASSESSMENTS
 "Section 1. Dues. Membership dues shall be thirty dollars ($30) per annum, payable at such time as may be fixed by the Trustees and may vary from time to time.
 "Section 2. Assessments. Assessments may be made by the Trustees as the need, therefore, requires. Assessments up to fifty dollars ($50.) per annum may be made by the Trustees without approval of the members. Assessments greater than fifty dollars ($50.) will require the Trustees to call a special meeting of the members to discuss the subject and request authorization (majority vote) from the members. Owners of record title to each lot shall pay dues and assessments which, if unpaid, within sixty (60) days from notice thereof, shall be chargeable to the lot or lots owned by delinquent member and shall be a lien upon such land to secure payment. The trustees shall have the right and power to bring all actions for collection of dues and assessments, and the enforcement of such liens and may file certificates of lien with the County Recorder in Ottawa County.
In 1985, the Nachmans and a number of other owners of property in the Bay Haven Estates subdivision filed suit against JIPOA to remove liens which JIPOA had placed on the plaintiffs' properties for the plaintiffs' failure to pay dues. Bremenour v.Johnson's Island Property Owners' Association, Ottawa County Court of Common Pleas, Case No. 23134. On July 30, 1986, the court in Bremenour filed its judgment granting JIPOA summary judgment and dismissing the plaintiffs' complaint. Although the court did not specifically discuss the liens themselves, the practical effect of the court's decision was the validation of JIPOA's liens.
From 1984 to 1991, the Nachmans contributed approximately $730 to JIPOA but specifically noted on the checks that the money was for road and causeway improvements and for causeway passes. In 1992, JIPOA refused to accept any money from the Nachmans for road improvements and causeway passes and have refused to accept such monies from the Nachmans since that time. Rather, in 1993, 1996 and 1997, JIPOA filed certificates of liens with the Ottawa County Recorder for unpaid dues and assessments which, as of January 1, 1997, JIPOA asserted totaled $3,050. The assessments were primarily for legal expenses JIPOA incurred in fighting the Baycliffs Corp.'s development of the property that Johnson's Island, Inc. had reserved to itself, its successors and assigns.
On March 11, 1997, JIPOA filed a complaint in foreclosure against the Nachmans to force a sale of the Nachmans' property and recover the amounts of the liens. Thereafter, JIPOA filed a motion for summary judgment in which it argued that pursuant to the court's decision in Bremenour, JIPOA had the authority to levy dues and assessments on its members and the authority to place liens on the property of those members who failed to pay those dues and assessments. The Nachmans responded with a motion in opposition and their own motion for summary judgment. The Nachmans argued they were not members of JIPOA and that there were no provisions in their land contracts, deeds, real estate restrictions, JIPOA's articles of incorporation or JIPOA's code of regulations which required them to be members of JIPOA. They further argued that Bremenour was not res judicata on the issues of whether the Nachmans were JIPOA members and whether liens based on legal assessments were valid. On September 28, 1998, the lower court issued its decision granting the Nachmans summary judgment. Initially, the court held that because the issue of whether the Nachmans were members of JIPOA was not actually and directly litigated in Bremenour, and because membership in JIPOA was not necessary to the court's decision inBremenour, res judicata did not apply as proposed by JIPOA and JIPOA was not entitled to summary judgment. As to the Nachmans' motion, the court held that the evidence was uncontroverted that neither the Nachmans' land contracts, deeds, or real estate restrictions nor JIPOA's articles of incorporation or code of regulations require Johnson's Island property owners to be members of JIPOA. The court further found uncontroverted the Nachmans' affidavits in which they attested that they never applied for membership in and were never accepted as members of JIPOA. The court then determined that there was no genuine issue of material fact as to the Nachmans' membership and that the Nachmans were not members of JIPOA. The court did, however, find that under Bremenour, the Nachmans were required to contribute to the normal operation of JIPOA. Quoting from the deposition testimony of Harold Clagg, the former president of JIPOA, the court held that the normal operation costs included: "road repair, services that we provide like refuse containers, security, insurance, taxes, all of that, things that normally cost, reoccurring cost kinds of things; electricity bills, all of these things that deal with the normal cost of running the operation." Pursuant to Bremenour, the court held that this charge was set at $30 per year per property owner. The court then held that liens in excess of that amount were invalid. On November 17, 1998, the court filed a judgment entry consistent with its decision. It is from that judgment that JIPOA now appeals, raising the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 The trial court erred when it denied Plaintiff's motion for summary judgment and granted Defendant's [sic] motion for summary judgment based upon a failure to properly apply the doctrine of res judicata [sic] to the issue of the obligation of property owners in by Bay Havens Estates Subdivision on Johnson's Island, Ottawa County Ohio to pay dues and assessments to the Johnson [sic] Island Property Owners [sic] Association as previously determined in Bremenour vs. Johnson's Island Property Owners [sic] Association, 1986 Ottawa County Court of Common Pleas, Case No. 23134.
"SECOND ASSIGNMENT OF ERROR
 The Trial Court erred when without authority or binding precedent it imposed a limitation of Thirty Dollars ($30.00) per year on the dues levied by the Johnson's Island Property Owners [sic] Association for normal operating costs including road repair, refuse containers, enforcement of deed restrictions, security insurance, and electricity."
In its first assignment of error, JIPOA asserts that the trial court erred in failing to find that Bremenour was determinative of the Nachmans' obligation to pay dues and assessments and of JIPOA's right to impose liens on the Nachmans' property for their failure to pay those dues and assessments.
In reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. LorainNatl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
Because the action filed below was a complaint in foreclosure, the primary issues before the lower court and this court are whether JIPOA's liens on the Nachmans' property were valid and whether JIPOA had a right to foreclose on those liens. JIPOA contends that because the court in Bremenour validated the liens based on unpaid dues, liens based on legal assessments are also valid. The Nachmans assert that because they are not members of JIPOA and because there is no language in any document compelling them to become members of JIPOA, JIPOA has no authority to impose on them assessments to fund litigation.
Initially, we must determine if there is any language in any document covering the Nachmans' purchase of their property which requires them to become members of JIPOA for "[a] party that purchases land with actual or constructive notice of a restriction upon such land will not be permitted to act in violation of the terms of that restriction." Bailey DevelopmentCorp. v. MacKinnon-Parker, Inc. (1977), 60 Ohio App.2d 307, 307. Typically, membership in a property owners' association or the obligation to pay for the upkeep of common areas in a residential area is created through deed restrictions filed upon the creation of the district or subdivision. See, generally, BB RealtyCompany v. Vo-Ash Lake Property Owners' Association, Inc. (Apr. 19, 1989), Carroll App. No. 559, unreported; Lake Milton EstatesProperty Owners' Association v. Gatchell (Mar. 3, 1980), Mahoning App. Nos. 79 C.A. 99 and 79 C.A. 68, unreported. Indeed, deed restrictions can compel membership in a property owners' association or can allow such an association to mandate membership. See Holiday Lakes Property Owners' Association, Inc.v. McCune (Jan. 11, 1991), Huron App. No. H-89-59, unreported. However, absent such deed restrictions, a nonprofit corporation cannot compel any individual to become a member of that organization who does not want to be a member. R.C. 1702.03; LakeMilton Estates Property Owners' Association, supra.
We have thoroughly reviewed the contents of the land contracts that the Nachmans signed when purchasing their property, the deed restrictions and the deeds themselves and find nothing that requires the Nachmans to be members of JIPOA. Although the Nachmans were given actual notice of the existence of JIPOA's predecessor, Johnson's Island Club, Inc., and knew that they took their property subject to conditions and restrictions "of record," those conditions and restrictions were as follows.
Pursuant to the deed restrictions, JIPOA has the authority to: (1) approve or deny septic tanks and filtration beds; (2) approve or deny fencing; (3) determine whether an animal is a nuisance; (4) approve or deny the sale and transfer of subdivision lots; and (5) enforce violations or breaches of the deed restrictions "by appropriate legal action." Furthermore, Johnson's Island Club, Inc.'s Articles of Incorporation, which were filed in 1956 and were therefore "of record" when the Nachman's purchased their lots, allow JIPOA to: (1) promote the development of the common facilities on Johnson's Island for the use and benefit of all lot owners; (2) operate and maintain said facilities and adopt and enforce regulations governing the conditions of use thereof; (3) promote service on or to the Island for the members; (4) provide a means of cooperation among the members in meeting the problems incident to island living; and (5) maintain standards for the admission of members and to give consent to the sale or transfer of realty on the Island. The articles then state that these stated purposes are "for the purpose of fostering the maximum use and high standards ofmaintenance of the common facilities of Johnson's Island." (Emphasis added.) In addition, the articles specifically do not compel membership but provide that membership shall be "open only to the trustees named herein and to bona fide owners or contract purchasers of parcels of realty on Johnson's Island." (Emphasis added.) Finally, the articles provide that the regulations adopted by Johnson's Island Club, Inc., i.e. JIPOA, can be amended by an affirmative vote of a majority of the trustees.
The regulations that are in the record below further fail to compel membership. Rather, they provide that "[a] membership is described as an individual or individuals who own a lot or lots and pay yearly membership dues and assessments." The regulations then provide for the "approval" of new members for membership by the majority of JIPOA trustees.
Accordingly, there is simply nothing in the applicable documents that requires or compels the Nachmans to be members of JIPOA. Indeed, JIPOA can point to nothing in those documents which requires membership. Nevertheless, JIPOA asserts that the lower court's decision in Bremenour is res judicata on the issue of the Nachmans' obligation to pay the dues and assessments which JIPOA imposes upon its members.
In Ameigh v. Baycliffs Corp. (1998), 81 Ohio St.3d 247,249-251, the Supreme Court of Ohio discussed at length the doctrine of res judicata:
 "We have observed that in order for res judicata to apply, a valid, final judgment must have been rendered upon the merits and an identity of parties or their privies must exist. Whitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, * * * paragraph one of the syllabus, modified in part on other grounds in Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 382 * * *. Res judicata
also applies where an issue is litigated that has been `actually and necessarily litigated and determined in a prior action.' Krahn v. Kinney (1989), 43 Ohio St.3d 103, 107 * * *.
"* * *
 "* * * Where the judgment of a court is not dispositive on issues which a party later seeks to litigate, res judicata is not applicable. State ex rel. Brookpark Entertainment, Inc. v. Cuyahoga Cty. Bd. of Elections
(1991), 60 Ohio St.3d 44, 47 * * *. This is true even if the prior court decision has discussed the issues that are the subject of the current litigation. Id."
We therefore must examine the Bremenour decision to determine whether the issues of the Nachmans' membership in JIPOA and the validity of liens based on legal assessments were actually and necessarily litigated in that case.
In their complaint, the Bremenour plaintiffs alleged that they were not obligated to JIPOA for the sums asserted in the liens and that JIPOA had wrongfully and without legal authority caused the liens to be filed. In its answer, JIPOA set forth an affirmative defense that the plaintiffs, as members of JIPOA, were estopped from challenging the validity of the liens. Subsequently, the Bremenour plaintiffs filed a motion for summary judgment in which they argued that JIPOA had no authority to place liens on "members' property on the basis of dues provided for in the organization's by-laws" because there were no provisions in the deed restrictions authorizing JIPOA or its predecessor to impose such liens. JIPOA responded with a brief in opposition and further requested summary judgment in its favor. In that brief, JIPOA discussed case law which supported its position that as a property owners' association it had the authority to place liens on members' property on the basis of dues and assessments provided for in the organization's code of regulations. Specifically, JIPOA argued:
 "The requirements of membership and obligation to pay dues and assessments to the association are simply burdens which are offset by enhancement of the property owners' enjoyment of their land. * * * It is evident that one whose property is enhanced by the services offered by a Property Owners' Association cannot in good conscience require the Association first to obtain judgment against the property owner for dues and assessments levied in each single year before the association can be permitted to file a lien, especially when the right to establish dues and assessments, including the filing of liens, has been granted to the association by the vote of the members."
In addition, JIPOA noted the following in a footnote:
 "Johnson's Island Property Owners' Association, formerly Johnson's Island Club, Inc., requires in the pertinent year a payment of `dues' of $30.00 per year. There are additional assessments of approximately $40.00 per year for road fees to maintain the interior road and the causeway leading to the island. In addition, assessments (on a voluntary basis) have been levied for payment of legal expenses to ward off developers who continually seek building permits for condominium construction, much to the eternal consternation of approximately 125 summer residents."
On July 30, 1986, the court in Bremenour filed its judgment entry granting JIPOA summary judgment. In pertinent part, the court held:
 "The Court finds as fact that uncontro-vertedly the Defendant is a duly constituted and organized body with a Code of Regulations that all parties hereto have had notice of; that Plaintiffs are members of the Association; that the use restrictions of the Defendant and its powers have been duly recorded as pertaining to the lands it governs, including those of the Plaintiffs';
 that all persons similarly situated as Plaintiffs take title to those premises with notice of those restrictions; the restrictions specifically set forth that the contents of the recordation (including the existence of the organization) are covenants that run with the land and that they are for the benefits of the owners of the land and to foster a uniform and harmonious use of the Island; the Plaintiffs made no assertion that the Defendant seeks its present liens for monies other than dues owed to the Association (apparently they have paid assessments for roads and etc.) and, finally, that Plaintiffs and those similarly situated vote on the members of the ruling body of the Association.
 "This Court concludes that there is ample authority to substantiate the legal preposition that, given notice, the purchaser of land takes it subject to all the rights, entitlements, benefits, liabilities and responsibilities to which he has constructive or actual notice of. It becomes axiomatic that when the notice specifically enumerates that all covenants and restrictions run with the land — it does just that. Equity would demand that a title holder cannot reap the benefits without accepting the responsibility of funding that which causes the benefits. Given the posture that an organization causes the benefits it can only legally and equitably follow that the organization be funded so it may continue to operate, i.e. dues. The old adage applies, you want to dance — you pay the fiddler." (Emphasis added.)
From this holding, it is apparent that while the court assumed the plaintiffs were members of JIPOA, such membership was not dispositive of the decision. Although discussed by the court, the issue of membership was not litigated. Rather, the court's language invoking principles of equity suggests that because, pursuant to the above listed documents, the plaintiffs bought their properties knowing of the existence of JIPOA and knowing that JIPOA provided services and benefits to all owners of property on Johnson's Island, all of those property owners were required to pay for those benefits. In our view, the court's decision in Bremenour can equally be viewed as finding that were the property owners not required to contribute to the normal operating costs of JIPOA they would be unjustly enriched by the benefits JIPOA provided to them. Accordingly, Bremenour is resjudicata only on the issue of the Nachmans' obligation to contribute their fair share of JIPOA's operational costs, which the court in Bremenour defined as "dues." A lien based on anything other than dues, however, was not actually or necessarily litigated in Bremenour. In support, we note the court's statement that "Plaintiffs made no assertion that the Defendant seeks its present liens for monies other than dues owed to the Association."
Accordingly, we conclude that Bremenour is not resjudicata on the issues of the Nachmans' membership in JIPOA or the validity of liens based on legal assessments and the trial court did not err in so holding.
The lower court further held that because the Nachmans were not members of JIPOA, liens based on legal assessments were not valid. For the following reasons we agree.
In the lower court's decision, the court quoted from the deposition testimony of Harold Clagg in concluding that the normal operation costs of JIPOA included "road repair, services that we provide like refuse containers, security, insurance, taxes, all of that, things that normally cost, reoccurring cost kinds of things; electricity bills, all of these things that deal with the normal cost of running the operation." This testimony was uncontroverted. These stated activities on the part of JIPOA are also consistent with the deed restrictions and articles of incorporation. Those documents clearly focus JIPOA's purpose on activities that deal with the operation and maintenance of the common facilities on the Island. They then allow JIPOA to adopt and enforce regulations governing the conditions of and use of those common facilities. Nothing in the applicable documents indicates that the filing of lawsuits to combat development on the Island is part of JIPOA's normal cost of operation.
Accordingly, the trial court properly concluded that liens based on legal assessments placed on the Nachmans' property were invalid and that the Nachmans were entitled to judgment as a matter of law on that issue. The first assignment of error is not well-taken.
In its second assignment of error JIPOA challenges the trial court's determination that the Nachmans were only obligated to pay dues in the amount of $30 per year for JIPOA's normal cost of operation.
In its decision, the lower court held that Bremenour was dispositive of the issue of the Nachmans' obligation to annually pay $30 for the normal operation costs of JIPOA. The court then further stated:
 "However, this court cannot become the annual arbiter of what are the normal operation costs of JIPOA. Therefore, barring a restructuring of JIPOA, this Court and JIPOA are constrained to the $30.00 yearly charge as proscribed in Bremenour. Liens in excess of that amount are invalid. The Nachmans are liable for those yearly charges and should be given the chance to pay them."
While we can appreciate the lower court's concern for future litigation over this issue, the court's ruling fails to address the true issue before the court. That is, what portion of the liens filed by JIPOA are attributable to the normal operating costs of JIPOA. The court found that as a matter of law the Nachmans, as property owners, were required to contribute their fair share to the normal operating costs of JIPOA. The court further found uncontroverted the areas which came under the heading "normal operating costs." What portion of JIPOA's liens is attributable to JIPOA's normal operating costs remains to be determined. Accordingly, we find that a genuine issue of material fact remains and that this case must be remanded to the lower court for further proceedings on that issue.
The second assignment of error is well-taken.
On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded to that court for further proceedings on the issue of the portion of JIPOA's liens attributable to JIPOA's "normal operation" as that phrase has been defined herein. The parties are ordered to pay their own court costs of this appeal.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J., JUDGE
 _______________________________ James R. Sherck, J. JUDGE
 _______________________________ Mark L. Pietrykowski, J., JUDGE
CONCUR.