DECISION AND JUDGMENT ENTRY
This appeal comes to us from a grant of summary judgment issued by the Lucas County Court of Common Pleas in a dispute between a homeowners' association and a residential contractor. Because we conclude that the trial court erred in granting a permanent injunction and in dismissing one of appellants' counterclaims, we reverse.
In 1993, appellant, Duane J. Tilliman,[1] purchased five lots in a residential development known as Heldman Terrace. In early June 1998, appellant made plans to build and sell homes on two of the smaller lots. Realizing that the homes he wanted to build encroached upon rear setback lines, appellant sought approval from adjacent property owners.
Two days after sending his letters, appellant Tilliman received a letter from appellee, Samuel Hancock, president of Heldman Terrace Property Owners Association, Inc., ("Association"), informing him that he had failed to submit his plans for approval. In response, appellant submitted plans to the Association, seeking to build homes of one thousand two hundred square feet with an attached garage. Appellant sought a waiver of the one thousand four hundred square feet restriction, claiming that the lot sizes were too small to permit a larger one story home with an attached garage and that building a two story home would be aesthetically undesirable. Appellant also contended that although a home without a garage could be built within the restrictions, that was also undesirable because it would also be less saleable. Appellees rejected appellant's proposed plans.[2]
Appellant Tilliman, upon checking with the state of Ohio, discovered that the Association was not currently chartered. Believing that the Association had unreasonably refused the waiver, Tilliman then broke ground and began constructing the proposed homes. Subsequently, appellees[3] filed a complaint and moved for summary judgment, seeking to permanently enjoin appellants' construction. Appellants counterclaimed for alleged damages due to construction delays, alleging that appellees had wrongfully withheld consent for the variance based upon racial and handicap discrimination and had wrongfully refused him membership in the Association.
On summary judgment, the court granted appellees' request for an injunction after reviewing various documents and the depositions of Samuel Hancock, Association President; Lorraine Hancock, Secretary/Treasurer of the Association and chairwoman of the architectural committee; and Eric Sherman, homeowner and member of the Association. The court also dismissed appellants' counterclaims.
Appellants now appeal from that decision, setting forth the following two assignments of error:
 "I. THE TRIAL COURT ERRED IN GRANTING THE PERMANENT INJUNCTION HEREIN ON SUMMARY JUDGMENT.
 "II. THE TRIAL ERRED IN DISMISSING DEFENDANTS' AMENDED COUNTERCLAIM ON SUMMARY JUDGMENT."
 I.
Appellants, in their first assignment of error, contend that the trial court improperly granted a permanent injunction on summary judgment. Appellants' argument primarily rests on the issue of whether the minimum square foot restrictions are enforceable because some residences have been built in contravention of those restrictions.
The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).
Covenants which restrict the use of land in a housing subdivision are enforceable if part of a general scheme or plan of development and the purchaser has notice of that plan. See Prestwick Landowners' Assn. v.Underhill (1980), 69 Ohio App.2d 45, 49; Bailey Development Corp. v.MacKinnon-Parker, Inc. (1977), 60 Ohio App.2d 307, 310. Deed restrictions may be enforced, even if other violations have occurred. Brown v. Huber
(1909), 80 Ohio St. 183, paragraph two of the syllabus. Nevertheless, restrictive covenants may become unenforceable, when there is a waiver or abandonment of the restrictions, Romig v. Modest (1956) 102 Ohio App. 225,229, and if the nature of the neighborhood or community has so changed "that the restriction has become valueless." Landen Farm CommunityService Assn. v. Schube (1992), 78 Ohio App.3d 231, 235-236.
In this case, the amended Declaration of Restrictions clearly states that "the ground floor area of one-story dwellings shall not be less than 1400 square feet for each single dwelling, exclusive of one-story open porches and garages * * *."[4] Appellant was aware of the restrictions, but initially submitted one-story plans which were for approximately one thousand two hundred square feet. Thus, appellants' plans did not comply with the deed restrictions. Contrary to appellants' contentions, we can find nothing in the record to support the claim that building a one thousand four hundred square foot home on the lots is impossible. Rather, the evidence shows only that such a design may be less "desirable" and as a result, not as profitable. Therefore, we must determine whether appellants presented sufficient evidence, on summary judgment, to establish a claim for abandonment or waiver of the restrictions.
We first note that the trial court determined that the certified auditor's printouts along with appellants' affidavit were not competent evidence because appellant did not have personal knowledge of the square footages noted on the documents. Evid.R. 803(8), entitled "Public records and reports," sets forth a limited exception to the hearsay rule for public records, and provides:
 "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"* * *
 "(8) * * * Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."
In this case, appellant Tilliman's affidavit stated that he had obtained the auditor's printouts at the county records office. Since the records were certified, they were self-authenticating, and provided at least some information as to total square footage for some of the homes. The records do not, however, provide any identification as to the type of home built, i.e. one or two story or bi-level. Nevertheless, appellees filed the affidavit of Leo Walter, a Heldman Terrace resident and Association member, which provides additional information as to the number of floors for each house as well as conflicting information as to square footage. In our view, these affidavits along with the other evidence presented is sufficient, for summary judgment purposes, to show that approximately one third of the homes in Heldman Terrace may violate the minimum square foot restriction. Any discussion as to accuracy or credibility is a disputed issue for determination by the trier of fact.
Moving on to the second prong of Romig, again, for the purposes of summary judgment, we conclude that this is sufficient evidence to show that the nature of the subdivision may have changed, at least with respect to enforcement of the minimum square footage required. Since material issues of fact remain in dispute and appellees are not entitled to judgment as a matter of law, the trial court erred in granting summary judgment in favor of appellees.
Accordingly, appellants' first assignment is well-taken.
 II.
Appellants, in their second assignment of error, assert that the trial court erred in dismissing their counterclaims.
Appellants' counterclaims included the assertion that appellees wrongfully excluded Tilliman from membership in the Association; that this exclusion and the refusal to grant him a waiver of the restrictions was racially motivated or due to handicap discrimination; and that Tilliman and his company suffered damages due to the delays in construction caused by appellees' refusal to grant the waiver and action to enforce the restrictions.
We have thoroughly examined the record and conclude that appellants have failed to present evidence which shows that the Association's refusal to grant a waiver was racially motivated. While the members of the association appear to be primarily African-American owners, this fact, by itself, is not sufficient evidence to demonstrate racially discriminatory motives. Likewise, appellants have failed to put forth sufficient, credible evidence that the Association discriminates against handicapped persons. Thus, as to those claims, we conclude that a grant of summary judgment and dismissal was proper. However, appellants' counterclaim that Tilliman was improperly excluded from membership in the Association has some merit.
Deed restrictions must be construed in favor of the free use of real estate and any doubt must be resolved against the restriction. Hunt v.Held (1914), 90 Ohio St. 280, paragraph one of the syllabus. Valid restrictive covenants as to the use of property, which run with the land, will be enforced where the grantee has either constructive or actual notice of such covenants. Arthur v. Bender (1951), 90 Ohio App. 187,190.
In this case, the original Declaration of Restrictions on file with the Lucas County Recorder states that the developer intended that each lot owner be given a vote as a member of the Property Owners Association. This document also provides that any changes or modifications of the restrictions shall be at the consent of the developer and "the consent of 2/3 of [the Association's] members evidenced by an instrument in writing, signed and acknowledged by such members and recorded in the office of the Recorder of Lucas County, Ohio." The developer properly amended and recorded the restrictions in 1978 to reduce the minimum size for one-story homes to one thousand four hundred square feet and for split-level and tri-level homes to one thousand seven hundred square feet, exclusive of porches and garages. In 1986, the developer properly recorded the assignment of his original rights, privileges, and powers to the Heldman Terrace Property Owners Association.[5] No other documents have been recorded in the Lucas County Recorder's Office.
In our view, while appellants were on notice that a property owners association may exist, no such notice existed as to any alleged changes made by the Association since nothing was ever recorded.[6] Therefore, we conclude that appellants presented sufficient evidence as to their counterclaim regarding the exclusion from membership in the Association to preclude a dismissal or grant of summary judgment.
Accordingly, appellants' second assignment of error is found well-taken as it relates to the issue of membership in the Association.
The judgment of the Lucas County Court of Common Pleas is reversed and remanded for proceedings consistent with this decision. Court costs of this appeal are assessed to appellees.
 ___________________ James R. Sherck, J.
 Peter M. Handwork, J., Melvin L. Resnick, J. CONCUR.
[1] D.J.T., Inc., the contracting company owned and operated by Tilliman, is also a defendant/appellant in this appeal.
[2] Appellees' letter cited as the reasons for rejection that appellants' plans did not meet the one thousand seven hundred square feet
requirement; that the houses were built on slabs, instead of the required basement foundation; and that the plans did not allow proper rear easements.
[3] Twenty three individual property owners were also plaintiffs and now appellees in the action.
[4] Two story, bi-level, and tri-level homes were to be at least one thousand seven hundred square feet.
[5] Appellants also argue that the Association was not authorized to prevent his construction since the charter had lapsed in 1996 and was not reinstated until September 1998. As stated by the trial court, R.C. 1702.60
provides that where an association's charter lapses and is reinstated and the officers of that association do not have knowledge of the cancellation, any attempt to exercise its powers during the period of cancellation will be valid.
[6] We also note that appellees eventually conceded that nothing in the restrictions exclude an owner's right to rent property within the subdivision. Likewise, we can find nothing in the restrictions which require a certain type of foundation or the inclusion of a garage, something alluded to in letters by the Association to appellants and other contractors.