PRESTWICK LANDOWNERS' ASSOCIATION, APPELLEE, *v.*
UNDERHILL ET AL., APPELLANTS.

(No. 9511—Decided July 16, 1980.)

*Mr. Frank E. Steel, Jr.,* for appellee.
*Skidmore, Ruport & Haskins Co., L.P.A., Mr. Archie W.
Skidmore* and *Mr. Thomas F. Haskins, Jr.,* for appellants.

MAHONEY, J.   The defendants-appellants, the Underhills, appeal an injunction against their continued use and maintenance of a fence built on their lot without the prior approval of the plaintiff-appellee, Prestwick Landowners' Association of Prestwick Condominium. We reverse.

*Facts*

The Declaration establishing Prestwick Condominium shows that the "units" are actually 134 parcels of real estate of varying sizes, but, generally, about 100 feet by 130 feet. The only common areas are the streets and three strips of land. One strip is about 40 feet by 600 feet and is abutted on each

side by six 100 foot lots. The other two strips are approximately 20 feet by 130 feet and lie between lots in the "condominiums." However, no drawings or descriptions, as provided in R. C. 5311.07, were offered in evidence as having been filed with the County Recorder to accurately define the boundaries of each "unit" as set forth in R. C. 5311.01 and 5311.03.

The Underhills purchased a lot in Prestwick Condominium in May of 1977. In July, they submitted plans for shrubbery and a fence to enclose a portion of their backyard. In submitting these plans, they attempted to comply with the following policy statement contained in paragraph 11 of the enabling Declaration which reads, in part, as follows:

"(b) * * * No building, fence, wall or other structure shall be commenced, erected or maintained upon the properties nor shall any addition thereto or change or alteration thereon be made until the plans and specifications showing the nature, kind, shape, height, materials and location of the same have been submitted to and approved in writing as to harmony of structural design and location in relation to surrounding struc-. tures and topography by the *Architectural Committee.* In the event said Committee is not in existence or shall it fail to approve or disapprove such design and location within thirty days after said plans and specifications have been submitted to it, approval will not be required and this article will be deemed to have been fully complied with." (Emphasis added.)

The enabling Declaration defines the "Architectural Committee," at paragraph 11, in the following manner: "(b) * * * The Executive Committee shall also be the Architectural Committee. * * * " However, there was another "Achitectural Committee" at Prestwick Condominium, chaired by Mr. Vic Davis; but, testimony at the trial clarified that, technically, this second committee was in reality only a "subcommittee" of the first, lacking the authority to approve or disapprove plans for additions and alterations. The Underhills submitted their plans to Mr. Davis, who omitted to share them with his fellow subcommittee members. However, Davis did attend the next Executive Board meeting in order to present the Underhills' plans to the members of the "Architectural Committee." The minutes of that committee reflect that they considered the Underhills' plans "informal" and rejected them.

At this point, the testimony conflicts. Davis claims he promptly notified Mr. Underhill of that rejection. Yet, Mr. Underhill claims Davis notified him that the plans were not approved, but did not notify him that they were "rejected." Once 30 days had passed without a rejection which satisfied Mr. Underhill, he proceeded to construct the fence and plant the shrubbery, relying on the policy provision quoted above which deems that 30 days without disapproval constitutes approval.

The Prestwick Landowners' Association sued to enjoin the Underhills from constructing the fence. The trial court granted the injunction, finding that the Underhills had been properly notified within 30 days that their plan was rejected, that the Landowners' Association had standing to sue, and that the covenants concerning additions and alterations were not so vague as to be unenforceable.

### Discussion

### Assignment of Error No. III

"The trial court erred in granting judgment and finding that plaintiff-appellee had 'standing' to sue, was the real party in interest, and that the Prestwick Condominium was properly organized under Chapter 5311."

" * * * [A] party seeking review must allege facts showing that he is himself adversely affected * * * ." *Sierra Club* v. *Morton* (1972), 405 U. S. 727, 740. Here, the Underhills challenge the association's standing to sue on behalf of the landowners of Prestwick Condominium.

While the association would be a proper party if Prestwick Condominium qualified as a condominium, R. C. 5311.19, the Underhills cite Ohio Attorney General Opinion No. 71-031 (1971), for the proposition that Prestwick Condominium does not so qualify. We agree with the Attorney General's opinion. The definitions under R. C. 5311.01 and 5311.03 preclude a "unit" from being an individual parcel of real estate. The individual lots were not part of the common areas so as to be condominium property. Declaring certain real estate to be a condominium does not make it so. This is especially true where no building plans required by R. C. 5311.07 were filed. In addition, we do not believe that the plot plans filed in Plat Book 75 for Summit County, at pages 39-40, established a condominium.

However, the Prestwick Landowners' Association came into being in 1970 as a result of the enabling Declaration filed in Volume 5031 of the Deed Books for Summit County, at page 437 *et seq.;* and, the defendants were "subsequent" grantees who purchased with full knowledge that there were restrictive covenants and conditions allegedly being enforced by the association. The fact that the Underhills' deed was silent as to restrictive covenants does not preclude the Underhills from being charged with constructive notice of the existence of the covenants and of their possible enforcement against them. See Annotation 4 A.L.R. 2d 1364. We are certain that any individual lot owner in the association could have maintained this action. We, therefore, conclude that under the peculiar facts of this case, the Underhills are estopped from asserting the defense of the association's standing to sue.

We do not, herein, decide any issues concerning the existence of a common law condominium since, by definition, it is excluded in this case. We, further, do not determine whether the covenants in this case run with the land since the issue was not raised. Neither do we determine the effect of amendments to the association by-laws.

### Assignment of Error No. II

"The trial court erred in granting judgment and finding against the weight of the evidence that the plaintiff-appellee met the requisite burden of proof and complied with the covenants and restrictions contained in paragraph 11(b) of the enabling declaration and were entitled to injunctive relief."

The evidence is ample to prove that the Architectural Committee considered and rejected the Underhills' proposal, that Davis notified Underhill orally of that rejection within 30 days, and that there was no need for the notice to be in writing. Therefore, the Underhills' claim that the association is precluded from injunctive relief because it failed to follow procedural guidelines is without merit.

### Assignment of Error No. I

"The trial court erred in granting judgment and finding the covenants as set forth at paragraph 11(b) of the Enabling Declaration for Prestwick condominium valid and enforceable as they relate to the defendants-appellants."

Ohio's position on the question of the validity of covenants

requiring consent before construction is uncertain. Annotation 40 A.L.R. 3d 864, 878-879, Section 3[c]. The greater weight of Ohio law, however, seems to uphold these covenants, as long as certain conditions are met. The primary condition is that there must be a general building plan in effect. *Dixon* v. *Van Sweringen Co.* (1929), 121 Ohio St. 56; *Exchange Realty Co.* v. *Bird* (Ct. of Appeals 1933), 16 Ohio Law Abs. 391, 394. Such a plan sets reasonable parameters for the exercise of consent. Broadly speaking, the goal of the building plan regarding fences at Prestwick Condominium is established by the following words: "harmony of structural design and location in relation to surrounding structures and topography." Plans dedicated to maintaining the harmony and aesthetic quality of a community have been upheld when exercised reasonably. *West Hill Colony, Inc.*, v. *Sauerwein* (Ct. of Appeals 1956), 78 Ohio Law Abs. 340, 343.

Such a plan, dedicated broadly to harmony and aesthetics, may be detailed in writing, either in the covenant itself or in later specific requirements. *Fairfax Community Assn.* v. *Boughton* (Ct. of Common Pleas 1955), 70 Ohio Law Abs. 178, 183, cited extensively, and in essence adopted, in *Bailey Development Corp.* v. *MacKinnon-Parker, Inc.* (1977), 60 Ohio App. 2d 307. Or, the development itself by its very appearance may give a lot owner notice of a *de facto* plan. *Bailey Development Corp.* v. *MacKinnon-Parker, Inc., supra.*

Here, there are no written or *de facto* guidelines to give notice to a lot owner as to the kind of fence which will qualify for the Architectural Committee's consent. The minutes of the Architectural Committee reflect this: " * * * the Board's policy * * * to consider each and every request for a fence by it's [*sic*] individual merits. * * * " In fact, there were no two fences alike in the entire development. Thus, the Underhills had no guidelines at all in submitting their plans, and the Architectural Committee had no guidelines at all as to accepting or rejecting them. In other words, there is too great a possibility here that the consent restriction can be exercised in an arbitrary, capricious, and unreasonable manner. *Dixon* v. *Van Sweringen Co., supra,* at 69; *Bailey Development Corp.* v. *MacKinnon-Parker, Inc., supra,* at 316.

In one respect the association was not unreasonable. It rejected the Underhills' plans in part because they failed to meet

the policy requirements of specificity as to "kind, shape, height, [and] materials" (paragraph 11[b] of the Declaration, *supra*). However, the implication is clear that the Architectural Committee rejected the plans primarily because they were not "pleasing" enough. "Pleasing" alone, like "harmonious," is not enough of a guideline to insure that consent be given or withheld in a reasonable manner.

### Summary

We sustain the first assignment of error, and overrule the second and third. We hereby reverse the judgment of the Court of Common Pleas of Summit County, enter final judgment for the appellants, the Underhills, and dissolve the injunction issued by the trial court.

*Judgment accordingly.*

BELL, P. J., and VICTOR, J., concur.