LANDEN FARM COMMUNITY SERVICES ASSOCIATION, INC., Appellant,

v.

SCHUBE et al., Appellees.

[Cite as *Landen Farm Community Serv. Assn.,*
*Inc. v. Schube* (1992), 78 Ohio App.3d 231.]

Court of Appeals of Ohio,
Warren County.

Nos. CA91–07–060, CA91–07–061.

Decided Feb. 10, 1992.

*Oliver & Powell* and *Michael E. Powell,* for appellant.

*Susan P. Spindel,* for appellee Greg Schube.

*Rogers & Greenberg* and *Barry W. Mancz,* for appellees Scott and Sheryl Mattis.

WILLIAM W. YOUNG, Judge.

This matter is before us on the appeal of plaintiff-appellant, Landen Farm Community Services Association, Inc. ("Landen Association"), from a declara-

tory judgment in favor of defendants-appellees, Greg Schube, Scott Mattis and Sheryl Mattis.

Landen Association is a nonprofit organization charged with the administration of the Declaration of Covenants, Conditions, Restrictions and Reservations of Easements ("Declaration") that are applicable to the residential community generally known as "Landen." The Landen community is a planned unit development which consists of approximately twenty-four hundred residential units, of which about two thousand are single-family detached residences.

In 1978, Landen Association published a "Resident's Guide" which included design and use standards and maintenance standards for those living at Landen. The intended purpose of the booklet was to aid homeowners in understanding both the design and use and the maintenance standards enacted by Landen's Design Review Board ("DRB"). Article VI of the Declaration establishes a DRB, which has the responsibility for the adoption and promulgation of design and use standards. Prior to commencing any exterior changes or modifications in their properties, homeowners are required to submit planning briefs to the DRB for approval.

In October 1987, appellees submitted applications to the DRB for freestanding basketball poles and backboards located at the edges of their respective driveways. Appellees testified that they were never informed of any decision on the part of the DRB to deny or approve their applications. Both appellees subsequently installed their basketball apparatus.

On two separate dates in 1989, Landen Association filed complaints against both appellees, seeking declaratory and injunctive relief. Specifically, Landen Association sought from the trial court a judgment declaring that Schube's basketball apparatus erected at 8269 Windsail Court and the Mattises' basketball apparatus erected at 8156 Leeshore Drive were in violation of the Declaration's design and use standards. On September 21, 1989, the court below filed a pretrial order consolidating the two complaints for trial.

The cases were tried before the Warren County Court of Common Pleas on February 7 and 8, 1991. On April 16, 1991, the trial court found that the restrictive covenant in question was not enforceable because there was no notice of the covenant to the community, the covenant had been waived and abandoned, and the covenant had been inconsistently and unreasonably enforced.

Landen Association filed this timely appeal and asserts as its sole assignment of error that the trial court's verdict was against the manifest weight of the evidence. Within its single assignment of error, Landen Association presents three issues for review. Landen Association contends that the trial

court erred in finding (1) that there was a waiver or abandonment of the restrictive covenant, (2) that the restrictive covenant had not been consistently and uniformly enforced, and (3) that there was insufficient notice of the restrictive covenant to the homeowners.

It is a fundamental principle of law that, in resolving an appeal based upon the weight of the evidence, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579. An appellate court, in reviewing a matter on a weight-of-the-evidence issue, should be guided by a presumption that the findings of the trier of fact are indeed correct. *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. If the evidence is susceptible of more than one construction, an appellate court should give the evidence the interpretation which is most favorable to sustaining the trial court's verdict and judgment. *Seasons Coal Co., supra.* Moreover, the granting of declaratory relief and the issuance of an injunction are matters of judicial discretion. Absent an abuse of discretion, an appellate court is not permitted to question the trial court's decision to grant or deny such relief. *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 65 O.O.2d 179, 303 N.E.2d 871; *Control Data Corp. v. Controlling Bd. of Ohio* (1983), 16 Ohio App.3d 30, 35, 16 OBR 32, 37, 474 N.E.2d 336, 342.

In determining whether or not the trial court abused its discretion in granting declaratory relief in favor of the appellees, we will address the three issues raised by Landen Association separately. Although the issues of waiver and failure to uniformly enforce the restrictive covenant are argued separately by Landen Association, we find that the same underlying and fundamental argument is presented in both, namely, whether or not the DRB abandoned any claim to rectify the alleged violations. In reaching its decision that there was in fact a waiver of the restrictive covenant, the trial court held that:

"This court must conclude that the DRB is reactive only to complaints and not to any observations or inspections which may have revealed violations. The court feels [that] the [DRB] acknowledged this approach in [appellant's opinion poll to its residents] * * * in which it states 'Landen's most violated standard is the *front* yard basketball pole and backboard' and '[b]ecause of the number of present violations of this type, the [DRB] wants your opinion on permanent front yard basketball structures.' The DRB expresses its own negative feeling toward this type of apparatus, but is awaiting an affirmation

or denial of its opinion by the members of the community. Only upon concurrence does DRB appear to be acting out of any urgency upon violations which had been long tolerated." (Emphasis *sic*.)

The trial court further stated:

"The particular facts which concern this court are the fifty violations in place in 1987, and that such an accumulation of violations was allowed. * * * Thus, this court would conclude that free-standing hoops have been integrated into the community to the extent that they might reasonably be expected to appear within any community. The court would conclude that the character of * * * [the] neighborhood has changed and that there has been a waiver."

With respect to the issue of whether the DRB abandoned its claim to upholding the restrictive covenant, Landen Association asserts that it approached the basketball apparatus matter in a deliberate and well-reasoned fashion. Landen Association contends that because it was attempting to be responsive to those who were in favor of abrogating the restriction, a poll was conducted to determine the thoughts of the homeowners. Moreover, Landen Association contends that the focus should be on the effect of violations upon the community, not the number of violations. In this context, Landen Association claims that the evidence is very clear that the restrictive covenant does give substantial value to the community, and that the numerous violations have not substantially affected the architectural schemes and general landscape of the area.

The Landen community was developed with common streets, common building setbacks and consistency in housing style. Landen Association contends that this architectural and landscaping scheme establishes a very aesthetically pleasing streetscape. Landen Association asserts that the free-standing front yard basketball apparatus restriction is intended to preserve the aesthetically pleasing view without the intrusion of poles and backboards becoming the focal point as one travels about the community.

The appellees claim that because Landen Association acquiesced and did not resist when at least fifty of the two thousand homeowners erected freestanding basketball hoops on their respective lots, Landen Association cannot now insist upon observance of the restriction.

The parties agree that with respect to the issue of what constitutes waiver and abandonment, the law in Ohio states that the "test is whether in view of what has happened there is still a substantial value in the restriction, which is to be protected." *Romig v. Modest* (1956), 102 Ohio App. 225, 230, 2 O.O.2d 242, 244, 142 N.E.2d 555, 559. In essence, if the nature of a neighborhood or community has so changed that the restriction has become

valueless to the owners of the property, a court will not, in the exercise of its discretion, enforce the restrictive covenant. Having carefully reviewed the evidence, we find that there was ample evidence to support the trial court's finding that the value of the restrictive covenant to the other lot owners and Landen Association was destroyed because there had been such a substantial change of condition in the Landen community.

■ The apparent purpose of this restrictive covenant was to preserve the aesthetics of the streetscape and homeowners' properties. However, Landen Association had permitted basketball backboards to be attached to the front of houses. We agree with the appellant's argument that the wear and tear on the front of houses from a basketball would not generally be considered aesthetically pleasing. Moreover, as we have previously noted, evidence presented at trial showed that approximately fifty other homes in the Landen community had freestanding basketball hoops on their property in October 1987. No action, however, was taken to rectify the apparent violation of the restrictive covenant.

The evidence of the numerous alleged violations clearly demonstrates by sufficient evidence that the freestanding basketball hoops have been integrated into the community, and that the character of the Landen community has been substantially altered so as to render the restriction valueless to the other homeowners. We, therefore, find that a waiver did in fact occur, and, as a consequence, Landen Association lost any right to enforce the restrictive covenant.

With respect to the issue of whether appellees had sufficient notice of the restrictive covenant concerning freestanding basketball hoops, we hold that the trial court was correct in finding that sufficient notice did not exist. In reaching its decision, the lower court determined that there was a failure of notice because the recorded covenant did not specifically address itself to freestanding basketball hoops, nor did the Landen community itself put a lot owner on notice of a restriction on freestanding basketball apparatuses.

■ A covenant restricting the use of land or requiring consent before construction is enforceable if it is part of a general plan or scheme and is detailed in the covenant itself, or if the development itself, by its very appearance, gives a lot owner notice of a *de facto* plan. *Prestwick Landowners' Assn. v. Underhill* (1980), 69 Ohio App.2d 45, 49, 23 O.O.3d 36, 39, 429 N.E.2d 1191, 1195.

■ In reviewing the evidence, including the written guidelines of the "Resident's Guide," we find that a homeowner in Landen community would not be put on notice of a restriction on freestanding basketball apparatuses.

The Resident's Guide itself states only that basketball "backboards may be secured to a home providing that the backboard is painted the same as the wall to which it is attached, and is placed in the rear of the house." There are, however, no written guidelines concerning freestanding basketball hoops. The Resident's Guide does require homeowners to submit planning briefs to the DRB for approval prior to commencing any exterior changes or modifications. Such briefs were submitted to the DRB by the appellees with respect to their basketball hoops. The evidence is unclear as to whether the appellees received notice of a denial or approval of their respective exterior change applications.

 Moreover, due to the numerous freestanding hoops located throughout Landen community, a homeowner was not put on *de facto* notice of a restriction on freestanding basketball hoops. Appellees testified that when they purchased their lots in 1987, they noticed numerous freestanding basketball hoops in the front yards of Landen community homeowners. Thus, appellees believed that front-yard, freestanding basketball hoops were permitted in Landen based on their observations of the neighborhood.

We, therefore, agree with the trial court that, given the appearance of Landen community and the ambiguous wording of Landen Association's Resident's Guide, appellees were not put on notice of a restriction on freestanding basketball hoops.

Finding no abuse of discretion on the part of the trial court, we uphold its decision and, thus, overrule Landen Association's sole assignment of error.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JONES, P.J., and KOEHLER, J., concur.