OPINION
Defendants-appellants (collectively "appellants"), Burger Chef Systems, Inc. ("Burger Chef") and Hardee's Food Systems, Inc. ("Hardee's"), appeal the decision of the Butler County Court of Common Pleas granting a declaratory judgment to plaintiff-appellant, Stephen W. Anglin, on the basis that appellants failed to properly execute their option to renew a lease on property owned by Anglin.
Anglin is the owner-landlord of the property at 5102 Dixie Highway, Fairfield, Butler County, Ohio. On December 1, 1977, Burger Chef commenced a twenty-year lease of the property ("the Lease"), with a lease termination date of November 30, 1997. Burger Chef assigned the Lease to Hardee's in accordance with Article XIX, Section 19.1 of the Lease. The Lease gave Burger Chef and Hardee's the option to renew for ten years. The rent was set by Lease Article I, Sections 1.5 and 1.6, but the rent could be prorated downward should any of the property be taken by eminent domain. Lease Article XVIII, Section 18.2. During the initial lease term, the road abutting the property was widened, resulting in a small portion of the property being taken by eminent domain. Hardee's accordingly paid a lesser amount of rent after that time.
Relevant to the renewal option, the Lease provides in Article I, Section 1.8:
 Lessee may extend the term of this lease for a period of ten (10) years upon giving Lessor written notice, at least sixty (60) days prior to the end of the original term hereof. The monthly rent for the extended period will be calculated at Lessor's option in one of the two following manners:
 Lessor's Option Number One: At an annual rate of Twenty-three Thousand Dollars ($23,000) per year, by monthly payments of Nineteen Hundred Sixteen Dollars ($1916.00) plus percentage rent at Two and One Half percent (2 1/2%) will be paid for all gross sales over $920,000.00.
Lessor's Option Number Two provided a detailed method for determining an average rent based upon appraisals of the property's value at the time of any renewal. Notice of acts taken under the Lease are governed by Article XX, Section 20.1:
 Where this Lease requires notices to be given, except where it expressly provides to the contrary, all such notices shall be in writing and (except for those that are delivered by hand) shall be deemed given when mailed by registered or certified mail, postage prepaid or when sent by telegraph or cable, addressed to the party or Guarantor entitled to receive the notice at his or its address as provided for such purpose in this Lease, or at such other address as the party to receive the notice last may have designated for such purpose by notice given to the other party. Any notice given by telegraph or cable shall be confirmed by registered or certified mail.
Article XXI, Section 21.1 provides:
 No alleged modifications, termination or waiver of this Lease shall be binding unless it is set out in writing and signed and delivered by the party against whom or which it sought to be enforced. Any document or writing, to be binding on Lessee, whether this Lease or any amendment, supplement or extension, must be signed by both Lessee and Lessor, the former acting through its President or a Vice President.
The Lease also includes a provision concerning any improvements made by appellants in Article IX, Section 9.1:
 Lessee intends to erect a building on the Premises. Lessor agrees to cooperate with Lessee in respect to any remodels, improvements, modifications or additions which Lessee may from time to time wish to make. Lessee shall at all times pay for the costs of all improvements, hold Lessor harmless from the claims of third parties in respect to the construction of all improvements and shall defend against or pay all liens which may be filed against the Premises in respect to work ordered or performed on behalf of Lessee.
 Said building shall become the property of Lessor upon termination of this Lease and may not be arbitrarily removed by Lessee.
The Lease also includes provisions governing the parties' actions upon the Lease's termination in Article XV:
 Section 15.1 — Decharacterization and Termination Upon the termination of this Lease, however, whenever or for whatever reason it may occur, Lessor shall allow Lessee, its agents, servants and employees a reasonable time and a reasonable opportunity to enter upon the Premises and to decharacterize them at its own expense by removing its signs, special fixtures, designs or colors or to efface any one or more of the same, so as to avoid confusing the public with respect to its trademark and their use.
 Section 15.2 — Surrender Upon the termination of this Lease, Lessee peaceably shall quit the premises and shall surrender them to Lessor. Lessee may additionally surrender any improvements to Lessor in an "AS-IS" condition.
Hardee's adhered to the terms of the Lease and timely paid all lease payments to Anglin. It was agreed by the parties that the deadline to renew the Lease under Section 1.8 was October 1, 1997, sixty days before the Lease expired. Prior to this date, Hardee's unsuccessfully negotiated with Anglin to modify the lease renewal terms. On September 24, 1997, Emma Jean Gay, Hardee's Director of Corporate Real Estate, sent a letter to Anglin regarding the requested modifications, but Anglin refused to modify the Lease terms. In a telephone conversation on September 30, 1997, Anglin advised Sarah Thomas, a Hardee's' asset management associate and Gay's subordinate, that he would not make any concessions as to the renewal option.
Hardee's senior management then told Gay to renew the Lease. Gay prepared and signed a letter dated September 30, 1997 for Hardee's to exercise the option under Section 1.8. The letter was sent to Anglin via certified mail. The letter included the following language:
 In accordance with the terms and conditions of said Lease, the option shall commence on December 1, 1997, and terminate on November 30, 2002. The annual rental during this option terms shall increase to $21,597 ($1,799.75 per month) plus 2.5% of gross sales in excess of $863,880.00.
On October 2, 1997, Gay had Thomas call Anglin regarding the letter. Thomas explained that a mistake had been made in the letter, and that Hardee's would exercise the Lease option for a term ending on November 30, 2007, not November 30, 2002. Thomas asked Anglin to modify the letter accordingly and sign and return it. Anglin did not do so. Later that day, Thomas sent a new letter with a corrected date to Anglin. This letter was not sent via certified or registered mail. This second letter was not acknowledged by Anglin.
On October 8, 1997, Anglin's attorney sent a letter to Hardee's advising Gay that Anglin considered the lease terminated because Hardee's letters had not conformed to the requirements of the Lease. Specifically, Anglin's letter advised that the September 30, 1997 letter sought to renew for only five years, rather than the required ten years. Anglin requested that Hardee's surrender the premises. Hardee's did not so surrender the premises.
On March 30, 1998, Anglin filed the instant complaint for a declaratory judgment, praying for a declaration that the Lease had been terminated and directing Hardee's to surrender the premises. Appellants answered and counterclaimed, seeking a declaration that Hardee's had properly exercised the renewal option. On March 1, 1999, Anglin filed a motion for leave to amend his complaint to request money damages. A bench trial was held on December 9, 1999, at the conclusion of which the trial court requested that both parties file proposed findings of fact and conclusions of law. The trial court adopted Anglin's proposal, granting to him a declaratory judgment that Hardee's had not properly renewed the lease. The trial court also granted Anglin's motion for leave to amend his complaint, ordering that discovery proceed as to any money damages. Appellants appeal.
 Assignment of Error No. 1: THE TRIAL COURT ERRED BY GRANTING A DECLARATORY JUDGMENT IN FAVOR OF PLAINTIFF-APPELLEE AND IN DENYING THE DEFENDANTS-APPELLANTS' REQUEST FOR DECLARATORY RELIEF.
In their first assignment of error, appellants contend that the trial court should have granted them declaratory relief. They assert that Hardee's exercised the Lease renewal option in accordance with Section 1.8, and that any irregularities in Hardee's letters to Anglin were clerical errors which had no substantive impact upon the renewal.
A declaratory judgment action allows the court to declare the rights, status, and other legal relations and obligations of the parties. Civ.R. 57;[1] R.C. 2721.03; King v. W. Res. Group (1997), 125 Ohio App.3d 1,5, discretionary appeal not allowed (1998), 81 Ohio St.3d 1502. In order to obtain declaratory relief, a party must prove three elements: (1) that a real controversy exists between the parties, (2) that the controversy is justiciable in character, and (3) that the situation is one in which speedy relief is necessary to preserve the rights of the parties. BuckeyeQuality Care Centers, Inc. v. Fletcher (1988), 48 Ohio App.3d 150, appeal dismissed (1988), 39 Ohio St.3d 703. A decision to grant or deny declaratory relief will not be reversed unless shown to be an abuse of discretion. Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt.Dist. (1995), 73 Ohio St.3d 590, paragraph three of the syllabus; LandenFarm Community Serv. Assn. v. Schube (1992), 78 Ohio App.3d 231, 234, jurisdictional motion overruled (1992), 64 Ohio St.3d 1418.
This case revolves around the interpretation of the Lease contract and whether Hardee's adhered to the terms of the Lease when seeking to exercise the renewal option. The agreement must be given a just and reasonable construction which carries out the parties' intent as evidenced in the contractual language. Skivolocki v. East Ohio Gas Co.
(1974), 38 Ohio St.2d 244, paragraph one of the syllabus. If a contract is clear and unambiguous, the court looks only to the plain language of the agreement to determine the parties' rights and obligations; the court only gives effect to the agreement's express terms. Uebelacker v. CincomSystems, Inc. (1988), 48 Ohio App.3d 268, 271, citing Seringetti Constr.Co. v. Cincinnati (1988), 51 Ohio App.3d 1, 4. A contract does not become ambiguous because its operation may work a hardship upon one party. OhioCrane Co. v. Hicks (1924), 110 Ohio St. 168, 172.
The Lease clearly set forth what was required for Hardee's to renew the Lease. Section 1.8 provided that Hardee's could renew the lease for one ten-year period if it gave Anglin sixty days written notice. Section 20.1 required that the notice be written, and delivered by hand, by telegraph or cable, or by registered or certified mail. Section 21.1 mandated that any "document or writing," including any "amendment, supplement or extension" had to be signed by Hardee's "President or Vice President" to be binding. Section 1.8 provided that should Hardee's seek to renew the Lease, Anglin had two options for determining the rent under the renewal.
The September 30, 1997 letter sent by Gay did not conform to these requirements. First, it provided for a five-year, not a ten-year renewal.[2] The letter was not signed by Hardee's' President or Vice President, but only by Gay, its Director of Corporate Real Estate. Most important, the letter purported to offer a specific new rent which did not conform to either of the rent options that Section 1.8 provided to Anglin. In this last respect, Hardee's was offering new terms for the Lease, and thus a new lease, not a renewal under Section 1.8.[3]
Because the September 30, 1997 letter did not conform to the terms of the Lease, Anglin was not required to accept it. The October 2, 1997 letter purporting to correct the date of the renewal is therefore irrelevant, because the numerous other defects in Hardee's attempted performance were not addressed or corrected.
Hardee's nonetheless contends that equity demands that it be allowed to renew the lease, or else it is forced to forfeit its investment in the property. Hardee's assertion is frivolous. In Sections 15.1 and 15.2, Hardee's contracted away its right to retain any possession in the property or its improvements to the premises should the Lease terminate. In fact, Section 15.2 mandated that once the Lease expired, Hardee's had to quit the premises. If this court were to find that equity demanded that Hardee's be allowed to remain on the premises, these contractual provisions would be rendered meaningless. We will not do so, especially where the Lease was entered into by sophisticated parties.
The trial court did not abuse its discretion by granting Anglin his requested declaratory relief. Hardee's did not properly renew the Lease in conformance with its terms. The Lease thus terminated, and appellants must quit the property. The first assignment of error is overruled.
 Assignment of Error No. 2: THE TRIAL COURT ERRED BY GRANTING PLAINTIFF-APPELLEE ANGLIN'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT TO ADD A NEW CLAIM TO RECOVER MONEY DAMAGES AFTER TRIAL.
Appellants next contend that the trial court erred by granting Anglin leave to amend his complaint to request money damages. Appellants assert that Anglin's motion was not timely filed, and that granting the motion prejudiced them.
Civ.R. 15 provides:
 (A) Amendments. A party may amend his pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleadings only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires.
The decision to allow amendment of a pleading is left to the trial court's discretion. Turner v. Cent. Local School Dist. (1999),85 Ohio St.3d 95, 99. Motions to amend pleadings under Civ.R. 15(A) should be liberally granted, except where the opposing party makes "a showing of bad faith, undue delay, or undue prejudice." Id., citingHoover v. Sumlin (1984), 12 Ohio St.3d 1, paragraph two of the syllabus.
Anglin's motion for leave to amend his complaint was filed on March 1, 1999, fully nine months before the bench trial. Although discovery had been completed, the basic facts underlying the claim had evidently been revealed in discovery, in that Anglin had an ongoing attempted sale during the proceedings, and that sale was extended until March 1999, when it then fell through. Only then, when Anglin could show some harm from Hardee's wrongful possession, did Anglin file his motion. Furthermore, Anglin's motion was granted only after trial, when it was determined that Hardee's had not properly renewed the Lease and was unlawfully possessing the property, thus establishing the most important facts underlying any claim for damages.
Even though the determinative facts necessary for the damages claim were established by the bench trial and trial court's decision, Anglin's motion had been pending for nine months at the time of the bench trial. Where a motion is pending for such a length of time, the opposing party cannot assert prejudice where it is aware of the basis of the claim to be amended, and where the new claim for damages arises out of the same facts as the underlying declaratory judgment action. The trial court acted properly when granting Anglin's motion and allowing further discovery on the issue of monetary damages arising out of Hardee's wrongful failure to vacate the property.
The trial court did not abuse its discretion in granting Anglin's motion for leave to amend his complaint. The second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] Civ.R. 57 provides:
 The procedure for obtaining a declaratory judgment pursuant to Sections 2721.01 to 2721.15, inclusive, of the Revised Code, shall be in accordance with these rules. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.
[2] Although appellants contend that this was only a clerical error, corrected by the October 2, 1997 letter to Anglin, we need not pass judgment on this matter because of other defects in the September 30, 1997 letter.
[3] Hardee's asserts that the parties orally agreed to reduce the rent due to the earlier eminent domain. Such rent reductions were provided for in the lease. Article XVIII, Section 18.2. Any other modifications of the lease — which would include changing Anglin's rent options upon renewal — had to be done in writing, not orally, and signed by Hardee's president or vice president. Lease Article XXI, Section 21.1.