OPINION
{¶ 1} This case is before us on the appeal of Todd Development Company and HDC II, L.L.C. (Todd, HDC, or Plaintiffs), from a summary judgment granted to various defendants (Owners) who own lots in Shaker Ridge Estates Subdivision (Shaker Ridge). Shaker Ridge is located in Warren County, Ohio.
 {¶ 2} In May, 2004, Todd and HDC filed a declaratory judgment action alleging that they owned certain lots that were originally part of Shaker Ridge. As platted, all the lots in Shaker Ridge were subject to restrictions against subdivision. In addition, Todd's lots were subject to a Common Driveway Maintenance Agreement (Driveway Agreement). Todd and HDC alleged that their lots were subsequently re-platted, and that the earlier restrictions should not be enforced because of a change in circumstances. Accordingly, Todd and HDC asked the trial court to declare the subdivision restriction and the Driveway Agreement void and of no effect.
 {¶ 3} Fenco Development Company and Martin Realty, Inc. (Fenco and Martin) were also named as parties in the declaratory judgment action. Fenco was the original developer for Shaker Ridge, and both Fenco and Realty, Inc. (Martin), were signatories to the subdivision restriction and Driveway Agreement. The Warren County Commissioners were included as Defendants because the Commissioners had approved the re-platting of Plaintiffs' lots. Furthermore, Warren County allegedly had an interest in the property because certain streets in the re-platted area had been dedicated as public streets.
 {¶ 4} The Owners filed a counterclaim and amended counterclaim, alleging that Plaintiffs had violated a covenant on trucks, a restriction on subdividing the lots, and the Driveway Agreement. Additionally, the Owners claimed that Plaintiffs had committed trespass. The Commissioners filed an answer in which they admitted having an interest in the property, since certain streets in the re-platted area had been dedicated as public streets.
 {¶ 5} In March, 2005, the Plaintiffs and the Owners both filed summary judgment motions. After considering the motions, the trial court found that the covenants were not ambiguous and should be enforced. The court granted summary judgment in favor of the Owners, and subsequently filed an entry prohibiting Plaintiffs from violating the subdivision restriction and Driveway Agreement. The court later amended the judgment by adding a Civ.R. 54(B) certification.
 {¶ 6} On appeal, Plaintiffs raise the following assignments of error:
 {¶ 7} "I. The trial court erred by overruling Plaintiff-Appellant's Motion for Summary Judgment.
 {¶ 8} "II. The trial court erred by sustaining Defendant-Appellees' Motion for Summary Judgment.
 {¶ 9} "III. The trial court erred in Overruling and Disregarding the Plaintiff-Appellants' Second Motion for Summary Judgment and Objections to the Decision and Proposed Entry by Defendants-Appellees."
 I {¶ 10} Before addressing the first assignment of error, we will briefly consider the issue of jurisdiction, which we may raise on our own motion. State ex rel. White v. Cuyahoga Metro.Hous. Auth., 79 Ohio St.3d 543, 544, 1997-Ohio-366. The complaint for declaratory judgment in the present case raised issues regarding whether the subdivision restriction and Driveway Agreement were valid. In responding, the Owners filed a counterclaim and then filed an amended counterclaim containing four counts, which alleged violations of various covenants as well as a claim for trespass. In the prayer for relief, the Owners asked that Plaintiffs be prohibited from violating the covenants. The Owners also asked for damages for trespass, which was the subject of Count IV. In that count, the Owners alleged that Plaintiffs had parked vehicles in front of the Owners' driveways and blocked access to their homes, had left construction vehicles in the common driveway, exceeding the scope of any easement Plaintiffs had, and had trespassed on the common driveway by planting trees and constructing a berm.
 {¶ 11} In ruling on the cross motions for summary judgment, the only issues the trial court considered were the validity of the subdivision restriction and the Driveway Agreement. The court did not hold that Plaintiffs had violated the covenants nor did it find that Plaintiffs had committed acts of trespass. Instead, the court entered prospective relief only, stating that Plaintiffs were prohibited from violating the covenants. And, as we noted, the court did file a Civ.R. 54(B) certification.
 {¶ 12} An order is final for purposes of appeal if the requirements of R.C. 2505.02 and Civ.R. 54(B) are met. ChefItaliano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, syllabus. Declaratory judgments have been classified as special proceedings, and orders in such cases will be final orders if they affect a substantial right. General Acc. Ins. Co. v.Insurance Co. of North America (1989), 44 Ohio St.3d 17, 21. A substantial right is defined as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). Generally, property rights are considered substantial rights. See, e.g., Chef Italiano,44 Ohio St.3d at 88 (orders dismissing specific performance and quiet title claims affected substantial rights).
 {¶ 13} In Chef Italiano, the Ohio Supreme Court found that a summary judgment decision was not final because it had resolved only two of four claims against a party. However, Civ.R. 54(B) and App. R. 4 were subsequently amended to clarify that Civ.R. 54(B) allows immediate appeal of judgments on less than all claims for or against a party. Walker v. Firelands CommunityHosp., Erie App. No. E-06-023, 2006-Ohio-2930, at ¶ 13-23. As a result,
 {¶ 14} "[A]n order that disposes of fewer than all of the claims in an action, and contains a Civ.R. 54(B) determination that there is no just reason for delay, is appealable if the claim or claims disposed of are entirely disposed of and either of the following applies. First, are the disposed of claim(s) factually separate and independent from the remaining claim(s)? An example would be claims that are based on different transactions or occurrences such as one claim for slander and another for negligence because of an automobile accident. Second, if the claims are not factually separate and independent, do the legal theories presented in the disposed of claim(s) require proof of substantially different facts and/or provide for different relief from the remaining claim(s)?" Id. at ¶ 23.
 {¶ 15} In Walker, the appellate court found that four dismissed claims were not factually separate and independent from two remaining claims that had not been dismissed. The appeal was allowed, however, because of some differences in factual proof and relief between the two sets of claims. Id. at ¶ 24.
 {¶ 16} In the present case, there is some factual overlap between the claim upon which summary judgment was granted and the claims that remain pending. However, there are also substantial differences in the required factual proof and relief requested. As we noted, the trial court focused on the validity of the covenants, and did not consider whether any particular act was a violation. The alleged acts themselves also involve different factual transactions. And finally, the trial court ordered prospective relief, i.e., the court did not hold that Plaintiffs had violated any covenants. If the court finds that the covenants were violated, or that Plaintiffs have committed trespass, the relief will be different from what has already been granted. Accordingly, we find that the present appeal is properly before us.
 {¶ 17} Turning now to the first assignment of error, we note that it challenges the trial court's decision to overrule Plaintiffs' motion for summary judgment. In order to place Plaintiff's claims in perspective, we will briefly outline the factual background that led to this action.
 {¶ 18} The record indicates that Fenco was the original developer for Shaker Ridge subdivision, which is located in Warren County, Ohio. Originally, Fenco proposed building 210 lots on 250 acres. Fenco proposed 30 lots for the first phase of development, but eventually reduced the number to 16, based on recommendations from the Warren County Combined Health District (Health District). The reduction was due to the Health District's concern over shallow rock soils and low-lying, unacceptable permeability soils in the proposed subdivision. Public sewerage was not available, and Fenco needed to increase lot sizes to allow for acceptable private sewage systems. A number of lots were acceptable "as is," but several lots had to be combined.
 {¶ 19} The final plat for Shaker Ridge was approved on November 24, 1998, and contained 16 lots. The recorded subdivision plat also contained several covenants that were identified as "protective covenants." These covenants and restrictions were described as being:
 {¶ 20} "for the benefit of all lots owners and are to run with the land and shall be binding on all parties and all persons claiming under them for a period of forty (40 years), from the date of the recording of this instrument at which time said Covenants shall be automatically extended for successive periods of Ten (10) years. At any time these Covenants may be amended by written consent of seventy-five (75%) of the then owners, each owner having one vote for each separate lot owned by him."
 {¶ 21} Among the covenants was a restriction on "subdividing," which stated that "No lot in this subdivision shall be subdivided into small lots or parcels except to be joined to an existing full-size lot adjacent thereto." At the time the subdivision covenant was filed, the 16 lots reflected on the subdivision plat ranged between 1.00015 and 3.18166 acres, with several lots being only a bit more than an acre in size. Only two lots were over three acres.
 {¶ 22} Lots one (1) through eight (8) in Shaker Ridge were also subject to a common driveway easement on the north side of the lots. This easement had a common drive entrance onto St. Rt. 122, which gave the lot owners access to St. Rt. 122. The subdivision plat indicates that the owners of Lots 1 through 8 were responsible for common drive maintenance and repair. In addition, a Driveway Agreement, dated October 18, 2000, was filed with the County Recorder. The original signatories to this agreement were Fenco and Martin Realty. Among other things, the agreement provided for installation of an initial base coat of asphalt on the common driveway after completion of all new home construction, but no later than June 30, 2003. The agreement further stated that each owner would thereafter be responsible for maintaining and repairing the asphalt in proportion to the frontage of that owner's lot.
 {¶ 23} On January 27, 2003, Fenco sold Todd lots 1, 2, 3, 14, 15, and 16, plus two additional adjoining parcels of land. One additional parcel was about 30 acres, and the other was around 11 acres. Notably, the lots Todd purchased were the larger lots out of the original 16, while the remaining ten individual lots (those now belonging to Owners) ranged between 1.0015 and 2.0871 acres, with only one lot being over two acres. The warranty deeds from Fenco to Todd indicate that Lots 1, 2, 3, 14, 15, and 16 were conveyed "subject to easements, conditions, public highways, restrictions of record, and taxes and assessments not yet due and payable."
 {¶ 24} Lots 1, 2, and 3 originally included about 10.0753 acres. These lots were subsequently re-platted and included in a record plat known as The Trails of Greycliff, which was approved by the Warren County Commissioners. The total acreage of The Trails of Greycliff was 21.4143 acres, and this plat consisted of 42 lots ranging between .3214 and. 6699 acres. This plat also included several streets, one of which (Greycliff Trail Drive) exited onto St. Rt. 122.
 {¶ 25} Todd did not keep, nor did it develop lots 14, 15, and 16. Instead, Todd sold these lots, along with the 30-acre parcel, to HDC. Again, this property was conveyed "subject to easements, conditions, public highways, restrictions of record, and taxes and assessments not yet due and payable." After the sale, Lots 14, 15, and 16 were also re-platted and included in a record plat known as Greycliff Landing, which was approved by the Warren County Commissioners. Greycliff Landing encompassed a 21.1018-acre parcel, with a total of 38 lots. Former lots 14, 15, and 16 originally consisted of about 7.3294 acres, but were now divided into 11 lots and partial parts of two other lots, along with three streets or parts of streets (Cardinal Cove, a cul-de-sac; Greycliff Landing, and Red Fox Run). The new lot sizes ranged between .3224 and .8740 acres, with most lots being close to a half-acre or larger.
 {¶ 26} Various streets in the new plats, including Greycliff Landing, Black Squirrel Way, Greycliff Trail Drive, and Red Fox Run, were approved by Warren County and dedicated as public streets. The Ohio Department of Transportation also approved the dedication of Greycliff Trail Drive as permitting access to St. Rt. 122. In addition, the new streets included parts of former Lots 1, 2, 3, 14, 15, and 16.
 {¶ 27} Unlike Shaker Ridge, The Trails of Greycliff and Greycliff Landing had public water and sewer. As a result, the new lot sizes could be smaller than what had been allowed in Shaker Ridge.
 {¶ 28} In the trial court, the Owners submitted the affidavits of two property owners in Shaker Ridge. One owner had lived in Shaker Ridge since 1999, and testified that the character of the neighborhood had not changed since he arrived. Another owner, Thomas Olson, said that he had lived in Shaker Ridge since January 2004. Olsen stated that he would not have purchased property without a covenant against subdividing lots. Olsen also said that the common driveway ended at his driveway. Based on the exhibits, it appears that Olson is the owner of Lot 4 in the Shaker Ridge plat, and that his home sits on a lot of about 1.2687 acres. The exhibits also indicate that all the properties in Shaker Ridge that need access to St. Rt. 122 still have access through the common driveway. This consists of five homes, including Olson's house.
 {¶ 29} In May 2004, Plaintiffs filed a declaratory judgment action, asking the court to declare that the subdivision restriction and the Driveway Agreement were of no effect. In granting summary judgment against Plaintiffs, the trial court found that the subdivision restriction was not ambiguous and that the restriction retained substantial value. The trial court also found that the Driveway Agreement was not ambiguous.
 {¶ 30} In the first assignment of error, Plaintiffs contend that the trial court erred in disregarding the fact that Warren County required the subdivision restriction, due to the sewerage issue. They also claim that the subdivision restriction and Driveway Agreement were no longer of substantial value, due to changes in the neighborhood.
 {¶ 31} We review summary judgment decisions de novo, which means that we use "the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v.Cleveland Bd. of Edn. (1997), 122 Ohio App.3d 378, 383
(citations omitted). "De novo review requires that we review the trial court's decision independently and without deference to it." Id.
 {¶ 32} As we noted, the trial court found the subdivision restriction and Driveway Agreement unambiguous. Like other written instruments, language in deed restrictions is construed in order to carry out the intention of the parties, which is determined from the language that is used in the deed. Corna v.Szabo, Ottowa App. No. OT-05-025, 2006-Ohio-2766, at ¶ 38. If the language is unambiguous, the restriction must be enforced as written. Courts will also apply the common and ordinary meaning of the language that is used. Id. However, if a deed restriction is "* * * indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land." Id.
 {¶ 33} In the present case, there is little doubt about the original purpose for the subdivision restriction. It was obviously caused by the poor soil and need to provide adequate disposal of sewage. Unfortunately for Plaintiffs, the original purpose is irrelevant, because the language of the restriction is unambiguous. Notably, the recorded plat does not inform individuals who purchase lots of the underlying reason for the restriction. Instead, a purchaser sees only the plain meaning of the terms used in the restriction, which says that "No lot in this subdivision shall be subdivided into small lots or parcels except to be joined to an existing full-size lot adjacent thereto."
 {¶ 34} This language clearly means that no lot can be reduced in size unless part of the lot is joined to an adjacent full-size lot. As an example, we will use Lots 1 and 2 of the original Shaker Ridge plat. Lot 1 is 3.1866 acres, and Lot 2 is 3.7448 acres. Under the subdivision restriction, an acre could be taken from Lot 2 and added to Lot 1, causing Lot 1 to be 4.1866 acres, and reducing Lot 2 to 2.7448 acres. However, the acre taken from Lot 2 could not be subdivided into a separate lot (in this case, Lot 17, since there were 16 lots in the original subdivision). An individual reading the subdivision restriction would conclude that lots in Shaker Ridge might vary slightly in size from their original proportions, but the number of lots would never be more than 16. Accordingly, we agree with the trial court that the restriction was unambiguous.
 {¶ 35} Plaintiffs also claim that the trial court erred in ignoring the legal significance of Warren County's approval of the re-platting of the property. We disagree, because zoning authorities do not have the power to change or vary covenants that run with the land if the covenants are valid. See Gray v.Wainwright (Apr. 20, 1984), Lucas App. No. L-83-340, 1984 WL 7842, *6, and Willott v. Village of Beachwood (1964),175 Ohio St. 557, 559. Consequently, we find no legal relevance in the fact that Warren County approved new plats without restrictions.
 {¶ 36} Plaintiffs also argue that even if the subdivision restriction is valid, it should not be enforced due to a change in circumstances. In Ohio, the test for such situations is:
 {¶ 37} "`whether in view of what has happened there is still a substantial value in the restriction, which is to be protected.' * * * In essence, if the nature of a neighborhood or community has so changed that the restriction has become valueless to the owners of the property, a court will not, in the exercise of its discretion, enforce the restrictive covenant."Landen Farm Community Serv. Assn., Inc. v. Schube (1992),78 Ohio App.3d 231, 235-236, quoting from Romig v. Modest (1956),102 Ohio App. 225, 230.
 {¶ 38} Landen involved a restriction against front yard basketball poles and backboards that had been violated by 50 homeowners in a planned community of about 2,400 residential units. In that situation, we upheld a finding that freestanding basketball hoops had been integrated into the community and that the character of the community had been substantially altered such that the restriction no longer had substantial value to other homeowners. 78 Ohio App.3d at 238. Similarly, inDillingham v. Do, Butler App. Nos. CA2002-01-004 and CA2002-01-017, 2002-Ohio-3349, we found that the value of a covenant restricting sheds, fences, and satellite dishes had been destroyed, due to the proliferation of these nonconforming devices in the community. Id. at ¶ 24-25.
 {¶ 39} Plaintiffs argue that the subdivision restriction no longer has substantial value because of the current availability of public sewer and water facilities. We do not find this argument persuasive because the subdivision restriction does not refer to sewerage. A condition to that effect could have been added to the plat that was recorded, but Fenco chose not to add such a limitation. Thus, the only notice purchasers received was that the plat contained restrictions against subdivision.
 {¶ 40} The Owners' affidavits indicate that the neighborhood has a rural character, and that its character has not changed since they purchased their lots. Accordingly, there is no basis upon which one could conclude, at present, that the covenant lacks substantial value. Such a state of affairs might eventually occur, but it does not presently exist. Compare Pelster v.Millsaps, Summit App. No 20507, 2001-Ohio-1419 (finding a restriction on lot-splitting unenforceable because lot-splitting had occurred in the neighborhood over time and the overall value and quality of the neighborhood had been enhanced by the split that was being litigated).
 {¶ 41} In view of the preceding discussion, we agree with the trial court that the subdivision restriction was valid and retained substantial value. Using the same reasoning, however, we find that the Driveway Agreement involves different circumstances and did not retain substantial value. The character of the neighborhood has changed so as to render the agreement valueless, at least to the extent that the agreement requires extension of the asphalt driveway across Lots 1, 2, and 3. These three lots can now access St. Rt. 122 via Greycliff Trail Drive, which has already been constructed and has been accepted as a dedicated street for that purpose. Since the five lots in Shaker Ridge have their own entrance onto St. Rt. 122 from the common driveway, extending the common driveway onto Lots 1, 2, and 3 retains no substantial value for Shaker Ridge lots. Accordingly, the trial court erred to the extent that it found the Driveway Agreement valid as to Lots 1, 2, and 3. The part of the agreement that requires Owners to maintain the driveway in front of their premises still has value.
 {¶ 42} Based on the preceding discussion, first assignment of error is overruled in part and is sustained in part. This case will be affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 II {¶ 43} In the second assignment of error, Plaintiffs claim that the trial court erred by sustaining the Owners' motion for summary judgment. Plaintiffs' initial point in this regard is that the trial court gave improper weight to the Owners' self-serving comments about the purpose of the subdivision restriction. We disagree, as the trial court did not appear to give any particular weight to these comments. The trial court did mention the Owners' affidavits in the factual part of its decision, but did not refer to the affidavits thereafter. Instead, the court simply found that the subdivision restriction was not ambiguous. We have agreed with that finding. We also found that the Owners' affidavits are relevant to the issue of whether the restrictions retained substantial value.
 {¶ 44} Plaintiffs' second point is that the trial court should have dismissed the Owners' motion for summary judgment because the Owners failed to file a counterclaim against the Warren County Commissioners. In this regard, Plaintiffs argue that they do not have authority to order Warren County to take action on public improvements now owned by Warren County throughout the six vacated and re-platted lots. We do not find this argument persuasive.
 {¶ 45} In the first place, the trial court decision did not order Plaintiffs to take action. Instead, the court simply upheld the validity of the covenants and ordered prospective relief. Furthermore, the presence of publicly dedicated streets does not even relate to the subdivision restriction. The restriction simply states that lots may not be subdivided into small lots; it does not mention dedicating land for public use.
 {¶ 46} And finally, even if the subdivision restriction did contain language about public streets, it could not be enforced against Warren County. See Shepherd v. United Parcel Serv.
(1992), 84 Ohio App.3d 634, 646 (holding that when plats are accepted by public authorities and dedicated by owners, roads on the plats are public roads); and Eggert v. Puleo (1993),67 Ohio St.3d 78, paragraphs one and two of the syllabus (holding that when a plat is approved by a municipal corporation and recorded with the county recorder, the fee of land designated for public use vests in the municipal corporation and a restrictive covenant binding private landowners cannot be enforced against the municipal corporation). The same reasoning applies to counties where land is designated for public use.
 {¶ 47} Accordingly, the trial court did not err in granting summary judgment in the absence of counterclaims against the Warren County Commissioners. Even if the Owners had filed a counterclaim against Warren County, the trial court could not have ordered the County to destroy the public streets that had been approved and dedicated. For the reasons previously mentioned, however, summary judgment should not have been granted for Owners on the Driveway Agreement.
 {¶ 48} Based on the preceding discussion, the second assignment of error is sustained in part and is overruled in part.
 III {¶ 49} In the third assignment of error, Plaintiffs claim that the trial court erred in overruling their second motion for summary judgment and in overruling their objections to a judgment entry that was proposed by the Owners. This assignment of error has merit.
 {¶ 50} When the trial court filed its decision on summary judgment, it asked the Owners to submit a judgment entry. Plaintiffs thereafter objected to the proposed entry and also filed a second motion for summary judgment, claiming that the trial court failed to consider the dedicated roadways that had already been platted and were now owned by Warren County. Plaintiffs also pointed out that the trial court had failed to address affirmative defenses, including the fact that the Owners had both actual and constructive notice of the entire building project to its current state of completion without raising objections or concerns. At the time Plaintiffs' motion and objections were filed, the summary judgment decision was not yet final, because the trial court had not included a Civ.R. 54(B) certification. However, the court refused to consider the matters Plaintiffs had raised, stating that it had invested considerable time in deciding the first motion. Notably, the Civ.R. 54(B) certification was not filed until more than five months after the original decision on summary judgment was issued. It was also filed almost five months after Plaintiffs' second summary judgment motion.
 {¶ 51} An interlocutory order of summary judgment may be reconsidered and revised at any time before final judgment is entered. Brown v. Performance Auto Center, Inc. (May 19, 1997), Butler App. No. CA96-10-205, 1997 WL 264203, *9, and Davis v.Becton Dickinson Co. (1998), 127 Ohio App.3d 203, 207. Reconsideration has even been granted where the court previously considered the facts and law supporting the renewed motion. Id.
 {¶ 52} We review the trial court's decision on such matters for abuse of discretion. See, e.g., White v. McGill (1990),67 Ohio App.3d 1, 4. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. However, courts have noted on many occasions that decisions are unreasonable if they are not supported by a sound reasoning process. Raizk v. Brewer, Clinton App. Nos. CA2002-05-021 and CA2002-05-023, 2003-Ohio-1266, at ¶ 10.
 {¶ 53} After reviewing the record, we find that the trial court's failure to reconsider its interlocutory order was unreasonable. Compare Hundsrucker v. Perlman, Lucas App. No. L003-1293, 2004-Ohio-4851, at ¶ 29 (finding that the trial court acted unreasonably and abused its discretion in failing to reconsider an interlocutory decision on a motion for summary judgment).
 {¶ 54} The issues in the present case are complicated. Nonetheless, the trial court simply dismissed the Warren County Commissioners without even considering whether the County's fee interest in the dedicated public streets might be affected. While we ultimately found that the County's fee interest could not be disturbed, this was a matter requiring research. It was not something that could be dismissed outright. Moreover, the issue was significant, since public roads had already been built.
 {¶ 55} Furthermore, there was evidence before the trial court that raised genuine issues of material fact on the issue of laches, which Plaintiffs had raised as an affirmative defense to the counterclaim. Plaintiffs did not discuss their affirmative defenses prior to filing the second motion for summary judgment. However, they were not required to do so, since the Owners failed to address affirmative defenses in their motion for summary judgment and in their reply memorandum.
 {¶ 56} A party moving for summary judgment bears the initial burden of addressing affirmative defenses in its motion for summary judgment. If the moving party fails to meet its burden as to these defenses, the nonmoving party has no burden and the trial court errs in granting summary judgment. ABN Amro Mtge.Group, Inc. v. Arnold, Montgomery App. No. 20530, 2005-Ohio-925, at ¶ 13-16.
 {¶ 57} For example, in ABN, the plaintiff met its burden of establishing a default on a promissory note, but did not address the affirmative defense of civil conspiracy. Accordingly, the Second District Court of Appeals found that the trial court had erred in granting summary judgment on all the issues and in entering judgment in the plaintiff's favor. The Second District noted that the defendant had no burden because the plaintiff had failed to meet its burden, as the movant, on the affirmative defense. Id.
 {¶ 58} "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Baughman v. State Farm Mut.Auto. Ins. Co., 160 Ohio App.3d 642, 646-647, 2005-Ohio-1948, at ¶ 10. The elements of this defense are: "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." PortageCty. Bd. of Commrs. v. Akron, 109 Ohio St.3d 106, 122,2006-Ohio-954, at ¶ 81 (citation omitted).
 {¶ 59} The following facts are pertinent to the laches issue. The executive vice-president of Todd, Richard Martin, indicated that the Owners were all notified that new subdivisions were being built adjacent to Shaker Ridge, and that Todd wanted to amend the subdivision restriction. This notice to the Owners would have occurred some time before April 26, 2004. The Owners were also aware of the new public water system for the subdivisions. One owner, Christopher Sizemore, told Martin that Shaker Ridge residents were going to be forced by Warren County to connect to the new water system at their own expense. The Owners wanted Martin to connect them to the system at no cost. Again, these discussions occurred prior to April 26, 2004. The action for declaratory judgment was filed on May 19, 2004, by Plaintiffs, not by the Owners. Even when the Owners filed a counterclaim, they did not ask the court for a temporary restraining order, nor did they request an injunction.
 {¶ 60} The evidence submitted below also indicates that lots in the new subdivisions were platted and sold, and that substantial development had occurred. An aerial photo shows fully constructed, paved streets and courts, together with about 25 constructed homes that are arranged fairly close together, in plats. These facts raise issues about whether Owners unreasonably delayed in asserting their rights, and about whether Plaintiffs were prejudiced as a result. As Plaintiffs indicate, the Owners could not sit by and watch homes and streets being constructed, yet do nothing.
 {¶ 61} Pertinent issues include exactly when each owner found out about the proposed subdivisions, which were approved by Warren County in January, 2004; what Owners observed as to construction of streets and homes; what, if anything, the Owners did to assert their rights; and reasons for any delay in asserting rights. Also relevant is the extent to which Plaintiffs proceeded with construction after being notified that Owners intended to assert their rights. These matters are obviously fact-intensive, and while the factual record is not complete, it does reveal genuine issues of material fact.
 {¶ 62} We express no opinion on the merits, but simply note that summary judgment was not appropriate, due to genuine issues of material fact. Either side may ultimately prevail on the laches issue; all that is clear for now is that summary resolution was not appropriate. Consequently, the third assignment of error is sustained, and this matter will be remanded for trial on the issue of laches.
 {¶ 63} Based on the preceding discussion, the first and second assignments of error are sustained in part and are overruled in part, and the third assignment of error is sustained. The judgment of the trial court is affirmed in part, is reversed in part, and is remanded for further proceedings.
Fain, J., and Donovan, J., concur.
Brogan, J., Fain, J., and Donovan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.